Jesse **FOWLER**, Individually and on behalf of all others similarly situated, Plaintiff,

v.

Abner **ALEXANDER**, Chief District Judge, 21st Judicial District of North Carolina, et al., Defendants.

No. C-219-WS-71.

United States District Court, M. D. North Carolina, Winston-Salem Division.

March 22, 1972.

Michael Sheely, Staff Atty., and Herman L. Stephens, of the Legal Aid Society of Forsyth County, Winston-Salem, N. C., for plaintiff.

Jacob L. Safron, Raleigh, N. C., for defendants Alexander, Henderson and Montague.

P. Eugene Price, Jr., County Atty., Winston-Salem, N. C., for defendants Wood and Lancaster.

## MEMORANDUM OPINION AND ORDER

EUGENE A. GORDON, Chief Judge.

This cause is before the Court upon motion by the defendants to dismiss the action for failure to state a claim upon which relief may be granted and for lack of jurisdiction over the subject matter. On February 18, 1972, oral argument was presented by counsel.

The plaintiff herein, Jesse Fowler, instituted this action praying that North Carolina General Statutes § 6–49 and § 6–50 be declared invalid and in contravention of the Constitution of the United States, the enforcement of the said statutes be enjoined, damages be awarded to the plaintiff, all record of the imposition of costs and subsequent incarceration of the plaintiff be expunged, and all persons held for failure to pay costs imposed pursuant to the said statutes be released.

The statutes, the enforcement of which is sought to be enjoined, provide for the taxing of costs of a criminal proceeding to the prosecuting witness if (1) the proceeding is terminated in favor of the defendant and (2) the trial court finds there was no reasonable grounds for the prosecution or that the prosecution was not in the public interest. Should the trial court additionally find that the prosecution was malicious or frivolous, the prosecuting witness may be imprisoned for non-payment of costs.

The plaintiff commenced this action on September 20, 1971, and moved the Court for a temporary restraining order and for the convening of a three-judge court pursuant to 28 U.S.C. § 2281 et seq. On October 4, 1971, the Court denied both motions. On October 7, 1971, the defendants Abner Alexander, Buford T. Henderson and Bert M. Montague, moved the Court to dismiss, for failure to state a claim upon which relief may be granted and for lack of jurisdiction over the subject matter. On October 12, 1971, the defendants Wood and Lancaster moved the Court to dismiss upon the same grounds and for the same reasons.

Upon motion of all defendants, all discovery has been stayed pending the disposition of these motions.

The plaintiff herein has sought as relief eleven separate items. For the sake of clarity, this Court shall consider each form of relief prayed, separately, in order to determine whether or not there is any relief which the Court may grant in consideration of the claims herein made.

First, the Court shall consider the relief of damages in the total sum of $52.-00, as amended.

■ The defendants Alexander and Henderson, as pled by the complaint, are Judges of the General Court of Justice of North Carolina, within the District Court Division thereof. The District Court Division of the General Court of Justice is a court of general jurisdiction within North Carolina, as authorized by G.S. § 7A–240. As Judges of courts of general jurisdiction, the defendants Alexander and Henderson are fully clothed by both logic and precedent with the shield of judicial immunity. This doctrine has a long history both in the courts of the United States and in those of England. "It has been the settled doctrine of the English Courts for many centuries, and has never been denied, that we are aware of, in the courts of this country." Bradley v. Fisher, 13 Wall. 335, 347, 20 L.Ed. 646, 649 (1872). Further, the Supreme Court of the United States noted that the failure of such immunity would " 'tend to the scandal and subversion of all justice, . . .' " that " . . . the protection essential to judicial independence would be entirely swept away.", that the judge's office would " . . . be degraded and his usefulness destroyed." Bradley v. Fisher, *supra.* This principle, enunciated almost a century ago, has not been lost among the recent rulings of the Supreme Court. Five years ago, while considering its application to 42 U.S.C. § 1983, through Chief Justice Warren, it reiterated that,

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in Bradley v. Fisher, [*supra.*] This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the

judges should be at liberty to exercise their functions with independence and without fear of consequences.' " Pierson v. Ray, 386 U.S. 547, 553–554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967).

The United States Court of Appeals for the Third Circuit exceeded the Supreme Court in its zeal for the doctrine. En banc, it said that, "We believe that abrogation of judicial immunity by Congress [through 42 U.S.C. 1983] would destroy the independence of the judiciary in the various States, and consequently deprive them of a republican form of government." Bauers v. Heisel, 361 F.2d 581, 588–589 (3rd Cir. 1966). The United States Court of Appeals for the Fourth Circuit has also upheld this doctrine in Mullins v. Oakley, 437 F.2d 1217 (4th Cir. 1971). Even the authorities cited by the plaintiff refer to injunctive relief in equity, and not damages at law. This immunity will, therefore, require that the relief sought by the plaintiff herein in his sixth prayer for relief, with respect to the defendants Alexander and Henderson, be denied.

■ The defendant Bert T. Montague, holding office under the authority of G.S. § 7A–340, is an officer of the General Court of Justice assisting the Chief Justice of North Carolina, and serving at his pleasure. Insofar as the defendant Montague has any connection with the administration of the statutes here at issue, it is as a servant of the General Court of Justice and the Chief Justice. As such, he acts as an extension of the judicial personality of the Chief Justice. His other duties have nothing to do with the enforcement of the statutes at issue here. See G.S. § 7A–343, 344. He is considered by North Carolina to be among its judicial personnel and is equivalent to service as a Judge of the Superior Court Division of the General Court of Justice in certain instances. G.S. § 7A–341. His position entitles him to the judicial immunity held by the other judicial personnel of North Carolina.

■■ The defendants Lancaster and Wood are respectively the Sheriff and Deputy Sheriff-Chief Jailor of Forsyth County. As such, they are officers of the peace within that County and subject to the orders of the General Court of Justice. The same doctrine of judicial immunity which prevents any recovery of damages from judges and their servants also grants a conditional and partial immunity to officers of the peace acting within their capacity and jurisdiction. Confinement by an officer of the peace, acting upon the basis of a judicial order, good on its face, executed in good faith, concerning which the officer has no cause to believe to be contrary to the Constitution of the United States or to the laws of North Carolina, is not and must not be grounds for an action for monetary damages under the provisions of 42 U.S.C. § 1983. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Steinpreis v. Shook, 377 F.2d 282 (4th Cir. 1967); Francis v. Lyman, 216 F.2d 583 (1st Cir. 1954); Bauers v. Heisel, *supra*. There is no allegation that the defendants Lancaster or Wood acted maliciously, without good faith, or without a judicial order valid on its face. Further, the statutes here in question not having been adjudicated to be contrary to the provisions of the Constitution of the United States, the defendants Lancaster and Wood are in no position to have had probable cause to believe that the statutes were contrary to that Constitution. Therefore, taking the allegations of the complaint as true, the plaintiff states no cause of action upon which the relief prayed in the sixth paragraph of the prayer for relief might be granted.

■ The second, fifth, and eleventh paragraphs of the prayer for relief seek the restraint of the defendants from enforcing and otherwise acting pursuant to North Carolina General Statutes §§ 6–49 and 6–50. The plaintiff prays that the present and future effects of the statutes be erased; that future prosecutions be restrained; and that present proceedings be suspended.

These statutes are of general application within North Carolina, and these defendants, with respect to their enforcement of these statutes, are state officers within the contemplation of 28 U.S.C. § 2281. Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). The relief sought through these paragraphs may therefore only be granted by a three-judge court pursuant to 28 U.S.C. § 2281 et seq. Although this Court, on October 4, 1971, declined to convene a three-judge court, on November 12, 1971, the plaintiff moved this Court to reconsider that decision and to convene a three-judge court.

The statutes in question authorize and direct the collection by North Carolina and for its own benefit of money under a certain specified circumstance. Such a statute must necessarily be either a criminal statute, providing for a fine, or a revenue statute, providing for a tax.

 The plaintiff contends that this statute is neither criminal in nature, nor part of the criminal procedure of North Carolina. Accepting this for the moment, *arguendo*, the statute must therefore be for the purpose of revenue. Section 1341 of Title 28 of the United States Code specifically provides that no United States District Court, of whatever number of judges composed, may enjoin, suspend or restrain the operation of a state tax statute, so long as there is any remedy available through the state courts. Article 27 of Chapter 1 of the North Carolina General Statutes provides for the appeal of the judgments of a Superior or (North Carolina) District Court Judge, specifically including the imposition of costs. State v. Byrd, 93 N.C. 624 (1885). Where an appeal will lie, but is lost, the writ of certiorari is provided as an adequate substitute. The plaintiff has not sought review either by appeal nor by petition to the Court of Appeals or the Supreme Court of North Carolina, for the writ of certiorari. The judgments of the Supreme Court of North Carolina, decided long before this present era of concern for procedural due process, would indicate that the plaintiff is not without an unreasonable expectation of a favorable ruling by that court. State v. Collins, 169 N.C. 323, 84 S.E. 1049 (1915). An entirely adequate remedy is clearly available in the General Court of Justice. Should these statutes be considered as revenue acts, any restraint upon their enforcement by either this Court or a district court of three judges is clearly contrary to the form and spirit of 28 U.S.C. § 1341.

 Should this Court find, as it does, that the taxing of costs to a prosecuting witness is a constituent part of the criminal procedure of North Carolina, the decisions of the Supreme Court of the United States on February 23, 1971, in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669; Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688; Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696; Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701; Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792; and Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781, require this Court to decline jurisdiction. The doctrine established by the late Mr. Justice Black in these decisions teaches that principles of comity within the federal system disallow interference by the federal courts in the criminal proceedings of the several state courts, except under the direct circumstances. The teachings of the Supreme Court are binding upon the inferior courts of the United States. Once the Supreme Court has declined jurisdiction in the interest of comity, no other court ought to accept it.

Insofar as the plaintiff herein seeks the restraint of the future enforcement of the statutes at issue, he stands in the same position as the plaintiffs in Boyle v. Landry, *supra*. In this case, the plaintiffs were at that time not subject to any prosecution under the authority of the statutes there at issue, nor were any prosecutions threatened. There is no allegation that the plaintiff herein has been threatened with future prosecution pursuant to the statute here at issue, either in good or bad faith. "There is

nothing contained in the allegations of the complaint from which one could infer that any one or more of the citizens who brought this suit is in any jeopardy of suffering irreparable injury if the State is left free to prosecute . . ." Boyle v. Landry, *supra*, 401 U.S. at 81, 91 S.Ct. at 760, 27 L.Ed.2d at 699.

Insofar as the plaintiff herein seeks to restrain the present enforcement of the statutes at issue, he stands in the same position as the plaintiffs in Younger v. Harris, *supra*; Samuels v. Mackell, *supra*; Dyson v. Stein, *supra*. See, Perez v. Ledesma, *supra*. In each of those cases, the plaintiffs were under prosecution for violation of acts, the enforcement of which each sought to have enjoined in the federal court. In each, the Supreme Court held that no injunction ought to issue inasmuch as no irreparable harm had been shown as required by Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

Dombrowski v. Pfister, *supra*, requires that facts be alleged sufficient to show irreparable damage from the use of bad faith arrests, indictments and threats of prosecution in order to harass and discourage the plaintiffs from exercising their constitutional rights. No such bad faith has herein been alleged, nor any harassment, nor any impediment to the resolution of the constitutional validity in the General Court of Justice of North Carolina. Without such allegations, made in good faith, the pleadings do not present the prerequisites for the claimed relief. Therefore, no injunctive relief may be granted by a three-judge district court, and one therefore ought not be convened.

Considering the statutes as providing for a procedure merely auxiliary to the criminal proceedings of North Carolina, as such they fall within the protection of the holding in Perez v. Ledesma, *supra*. Comity precludes not only the injunction of criminal proceedings in the state courts, but also any disruptive interference thereof. Only when the whole proceeding may be enjoined does the federal district court have jurisdiction to intervene in any way. The United States inferior courts are no place for interlocutory appeals from the criminal courts of the several states. *Cf.* Perez v. Ledesma, *supra*, 401 U.S. at 84, 91 S.Ct. at 676, 27 L.Ed.2d at 705. Such intervention would do greater violence to the principles of comity than the total restraint of the prosecution.

The plaintiff, in his fourth paragraph of the prayer for relief, seeks declaratory judgment pursuant to 28 U.S.C. § 2201 from this Court that North Carolina General Statutes §§ 6–49 and 6–50 are invalid and contrary to the Constitution of the United States. Such relief may be granted by this Court. However, the nature of this relief is equitable, and its effect similar to that of an injunction. The Supreme Court of the United States, in Samuels v. Mackell, *supra*, recognized this similar nature, and held that those same rules of comity which preclude the restraint of criminal proceedings by a district court of three judges preclude also the declaration by a single judge that the statutes pursuant to which the proceedings are being conducted are invalid and unconstitutional. See Great Lakes Dredge & Dock Company v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943). The grant of declaratory relief must, therefore, be held to be outside the equitable jurisdiction of this Court for the same reasons which disallow the issue of an injunction by a three-judge court.

The plaintiff, in paragraphs seven and eight of his prayer for relief, seeks the writ of mandamus to compel the expunction of all record of the imposition of costs by Judge Henderson and his subsequent incarceration pending payment of costs. This is not a classical form of relief, either at equity or common law. The expunction of the records of the imposition of costs, commitment and imprisonment is a relief more in the nature of the writ of habeas corpus ad subjiciendum. United States v. McLeod,

385 F.2d 734, 747 (5th Cir. 1967). However, such relief appears to have been granted as auxiliary relief to a determination that the custom or statute, pursuant to the authority of which the record in question was created, was invalid and contrary to the Constitution of the United States. Wheeler v. Goodman, 306 F.Supp. 58 (W.D.N.C.1969); Hughes v. Rizzo, 282 F.Supp. 881 (E.D.Pa.1968). See United States v. McLeod, *supra*; Menard v. Mitchell, 328 F.Supp. 718 (D.D.C.1971). In each of these cases, the statute or custom was being used to harass the plaintiffs and to discourage them from exercising their constitutional rights. See especially United States v. McLeod, *supra,* and Hughes v. Rizzo, *supra.* In each case, also, the court had found that there was equitable jurisdiction for the issuance of an injunction restraining the enforcement of the statute or custom in question. As mentioned above, the prerequisites for the issuance of an injunction are not found herein, and therefore no injunction will issue. The same prerequisites being necessary for the issue of this form of mandamus as for the issue of an injunction, no mandamus will issue from this Court.

In the tenth paragraph of his prayer for relief, the plaintiff herein requests the release of all prisoners presently being held under the authority of the statutes here in question. A necessary and logical prerequisite to such an order is a judgment declaring said statutes invalid and contrary to the Constitution of the United States. This Court could hardly consider the issuance of such an order unless it appeared that the incarceration was pursuant to an invalid statute and, therefore, unlawful. No such declaration has been granted by this Court, nor by any other. Therefore, no such order can issue from this Court.

As has been noted before, the relief sought by the plaintiff, insofar as it refers to the expunction of all records concerning the imposition of costs and the subsequent incarceration, is similar in nature to that which is inherent to the writ of habeas corpus ad subjiciendum. In accordance with the mandate that pleadings ought to be construed liberally, this Court shall consider this complaint as a petition for the writ of habeas corpus ad subjiciendum. Such a petition would not be necessarily moot, nor would the relief prayed be outside the jurisdiction of this Court. However, before this Court shall consider the petition, the petitioner must conform to the prerequisites for the issuance of this writ established by the Congress and set out in 28 U.S.C. § 2254(b). This section requires that the petitioner first exhaust all available remedies in the General Court of Justice of North Carolina. The decision of the Supreme Court of North Carolina with regard to a situation somewhat similar to this case, mentioned earlier, and reported as State v. Collins et al., 169 N.C. 323, 84 S.E. 1049 (1915), indicates that there is no cause to believe that the point, for practical purposes, has been decided against the petitioner. The complaint, therefore, considered as a petition for the writ of habeas corpus ad subjiciendum, must be denied for failure to exhaust all available state remedies.

In accordance with the above analysis, there appears to be no relief sought herein by the plaintiff which this Court may grant. Either the parties defendant are clothed with judicial or quasi-judicial immunity, or this Court lacks equitable jurisdiction. An action for damages against a judicial officer or a quasi-judicial officer fails to state a claim upon which relief may be granted. An action seeking several various forms of equitable relief without presenting the necessary allegations of fact prerequisite to the equitable jurisdiction of this Court is necessarily outside the jurisdiction of this Court.

For these reasons, the motions of the defendants to dismiss this action should be granted.