291 So.2d 301

Clarence R. **MOODY**

v.

Riley **STANFIELD.**

SC 496.

Supreme Court of Alabama.

March 7, 1974.

---

Stanley E. Munsey, Tuscumbia, for appellant.

Robert H. McKenzie, Florence, for appellee.

HARWOOD, Justice.

This suit originated on the law side as a suit in the nature of ejectment. By agreement of counsel the case was transferred to equity to determine the issue of title to the property in question. There the plaintiff on the law side filed a complaint, and the former defendants filed a plea in bar and an answer, and demanded a jury.

The plea in bar in effect set out that the respondent had acquired the subject land by purchase from Mr. and Mrs. Pierce Burgess in 1943, and have been in open and continuous possession since that time.

Issue was joined, and the decree later entered recites:

"The verdict of said jury * * * on issues of facts presented by the Pleadings and specified by the court is as follows:

'We the jury find our verdict in favor of the Respondent. Signed Claude T. Keenum, Jr., Foreman.'

"Said cause is submitted for final decree on the verified Bill of Complaint, the Answer of the Respondent, the above jury verdict, and oral testimony taken in

*open court, all is shown by the note of submission."*

Thereafter the Chancellor, on 12 January 1973, filed his decree in the cause.

He found that at the time of the filing of the Bill of Complaint, the respondent was in actual possession of the subject land, and had been in possession and claiming the land to be his for more than twenty years; that the respondent had built his home on the land in 1943; had cleared several acres of land, and had periodically cut timber off the land for the whole of such period; that at one time he had put no trespassing signs around the property, and had exercised other acts of ownership, such as would ordinarily be done on this type of property by the owner for his own use, and for the exclusion of others; that at the time of the filing of the suit, no claim had been made, nor action filed by any of the complaint's predecessors in title against the respondent.

The Chancellor further found from a consideration of all the evidence that the respondent had been in actual, adverse, continuous, and peaceable possession of the land for over twenty years next preceding the filing of the bill, and that under the doctrine of prescription the complainant's suit was barred by law under the provisions of Section 36, Title 7, Code of Alabama 1940.

The Chancellor then decreed that the complainant, Clarence R. Moody, had no right, title, or interest in the land, and that the respondent, Riley Stanfield, was and is, the owner in fee simple of the subject land.

From this decree, the complainant, Clarence R. Moody, perfected this appeal. Since Moody occupied the position of complainant below, and the appellant here, we will continue to refer to Moody in this opinion as the complainant.

In the hearing below, Moody sought to establish his title to the subject property by the operation of several wills. He testified that Mr. Pierce Burgess, from whom the respondent contends he bought the subject land, died and left his interest in the land to his wife. By her will Mrs. Burgess, who died in May, 1959, devised her interest in the land to her sister, Mrs. Nellie J. Emmert. Mrs. Emmert died in 1967 and devised her interest in the land to a Mrs. Reed and to the complainant. The complainant further testified that he later acquired Mrs. Reed's interest in the land.

The wills were not introduced in evidence, and other than Mr. Moody's testimony as to the provisions of the wills, there is no showing whether the devises in the wills were of the subject land, or were general devises of all the land owned by the respective testators at the time of their deaths.

We interpolate here that Mr. Burgess died about two months after execution of the deed granting certain described land to respondent in 1943.

Mr. Moody testified that on several occasions prior to his acquiring an interest in the subject land, he went with Mrs. Burgess and Mrs. Emmert to look at the land. However, these visits occurred prior to 1957, and consisted of riding in an automobile on a road that went around the land. No one left the automobile to make any inspection. On these drives they would drive by the respondent's house.

In 1957, Mrs. Burgess hired Cletus Jackson to "look after" her land. Mrs. Burgess owned tracts of land in various localities in addition to the subject land. Jackson's activities in connection with the subject land consisted of driving in an automobile around the land from time to time. He never entered on the land.

The complainant and his claimed predecessors in title had paid taxes on a portion of the subject land.

The respondent testified that in 1943, he negotiated with Mr. Burgess for the purchase of the land in question. He walked over the land three times. He did not

have the land surveyed, nor did he obtain an opinion as to title. The land he sought to purchase was known as Sherwood Ridge. In March of 1943, he purchased the land and obtained a warranty deed therefor from Mr. and Mrs. Burgess. The land was described by government survey numbers, and also as Sherwood Ridge, and comprised 100 acres more or less. Actually, it is inferable from the evidence that the land known as Sherwood Ridge contained more than 100 acres. We do not consider the description in the deed of importance since the respondent under his plea claimed the subject land under the doctrine of prescription, and color of title is not an essential element to establish this doctrine, and the other elements of adverse possession being shown, the law presumes title. Fitts v. Alexander, 277 Ala. 372, 170 So.2d 808, and authorities cited therein.

After obtaining the deed from Mr. and Mrs. Burgess, the respondent in 1943 built a house thereon located on the north side of a road that ran through the land. He cleared some five acres around the house, which clearing was enlarged from time to time until some 25 acres were cleared. Respondent also carried on logging operations on the entire tract and erected a log mill, first on the north side of the road, and later moved the log mill across the road to its south side. These operations were carried on intermittently from the time the respondent first acquired the land. The timber was cut in 1944, 1946, and 1953. In 1960, the respondent put up no trespassing signs. He fenced some of the property in 1943 and 1944. In 1952, he and his wife gave an easement to the T.V.A. to run lines across the property, and had obtained cotton allotments on the land. Respondent testified that since his purchase of the land from Mr. Burgess, he had claimed ownership of the subject land.

The respondent also presented witnesses who testified they had lived in the community for a long number of years, and that Sherwood Ridge encompassed all of the subject land, and further that by general repute in the community the land was regarded as owned by the respondent. Neither the respondent nor any of his witnesses had ever heard of anyone claiming title to the subject land adverse to respondent's title.

Reasonable inferences which the jury and the Chancellor could draw from the evidence is that the respondent purchased the subject land in 1943, and took possession thereof in that same year. Thereafter, he exercised possession over the tract, and made such use thereof as would ordinarily be made by an owner in light of the nature and condition of the land. See Long v. Ladd, 273 Ala. 410, 142 So.2d 660; Morris v. Yancey, 267 Ala. 657, 104 So.2d 553. We think it highly significant that none of the predecessors under whom complainant seeks to claim at any time questioned the possession of the respondent though under the evidence these predecessors must be deemed to have been aware that the respondent had built his home on the tract and had occupied the same openly and continuously since 1943.

The complainant has made some fourteen assignments of error.

Assignment of error No. 1 relates to the action of the court in overruling an objection propounded by counsel for the complainant on cross-examination to Tom Clay, a witness for the complainant as to whether some 25 acres had been cleared around respondent's house. Counsel for complainant states in brief that the question "would have the effect of cancelling this witness' testimony already elicited." Counsel further contends that the question was leading.

Since one of the purposes of cross-examination is to sift and test the testimony of a witness given on his direct examination, a question cannot be considered objectionable because it seeks to carry out this function. Further, we doubt that the question was leading, and even if it might be so considered, the scope and extent of cross-examination rests in the

sound discretion of the trial court and such discretion will not be revised on appeal unless abused. Jordan v. State, 267 Ala. 361, 102 So.2d 4; Carlisle v. Miller, 275 Ala. 440, 155 So.2d 689. We find no abuse in this instance.

■ Assignment of error No. 2 asserts that the court erred in permitting respondent to ask Mrs. Goins, a witness for the complainant, certain questions which were properly for cross-examination. The record shows that counsel for respondent, during the direct examination of Mrs. Goins, requested permission to ask Mrs. Goins "a couple of questions" on voir dire. No objection was interposed to this request by counsel for complainant, and after several questions and answers thereto, direct examination was resumed. Since no ruling of the court was invoked in this instance, we find nothing to review.

Assignments of error Nos. 3 [1] and 6 assert error because of certain remarks by the court, in one instance to the jury, and in the other instance to counsel for complainant, regarding the issues of the trial. In neither instance were the remarks improper. And again no objection was interposed in either instance. We find no merit in assignments No. 3 [1] and 6.

■ Assignment of error No. 3 [2] asserts error in sustaining respondent's objection to a question propounded to complainant on his direct examination. The record shows that the question was answered *prior to the sustension of the* objection.

■ Assignment of error No. 4 asserts error on the part of the court in excluding a portion of the answer of the complainant to the following question, on direct examination:

"Q. All right, Mr. Moody, you say you drove by Newsome Springs. Did you drive out to the vicinity of this property? [With Mrs. Burgess.]

"A. Yes, I drove by Mr. Stanfield's house, and she said that he had his house on her property."

On respondent's motion, the court excluded that portion of the answer as to "what Mrs. Burgess told Mr. Moody."

Obviously the answer was not responsive to the question.

■ Further, we do not see but that the complainant was helped in excluding this portion of the answer. Had the stricken portion of the answer remained in evidence, it would have reinforced respondent's claim of open and notorious possession of the property with the full knowledge of Mrs. Burgess. We find no merit in assignment of error No. 4.

■ Assignment of error No. 5 complains of the court's denial of complainant's motion that the jury be taken to view the subject land. Ordinarily the decision of whether to take a jury to view a locus is within the sound discretion of the trial judge, and his decision on such question will not be disturbed in the absence of abuse of such discretion. Rutledge v. Brilliant Coal Co., 247 Ala. 40, 22 So.2d 428. We find no abuse of discretion in this instance.

■ Assignment of error No. 7 asserts error in the action of the court in overruling complainant's objection to the following question addressed to respondent's witness, Dailey:

"Q. All right, and did you, in order to do this, have to pull the power lines across any of the property of Riley Standfield's?"

The ground of the objection was that it called for a conclusion on the part of the witness.

While technically the question may have been objectionable as invading the province of the jury, the record shows that prior to this question the witness who had lived in the area over a long number of years, had testified without objection that Stanfield

had bought the subject property in 1943, had built his home thereon, and had exercised ownership of the same since that time and that it was generally reputed that Stanfield owned the property. In view of this prior testimony by Dailey, it is not probable that the complainant was injured in any substantial right by the ruling asserted as error in assignment of error No. 7. Sup.Ct. Rule 45.

 Assignment of error No. 8 asserts that a short portion of the court's oral instructions to the jury set out in the assignment, as to the Rule of Repose or Prescription, was incomplete. Taken as a whole, the instructions of the court on this point were full and complete. Further, the record shows that at the conclusion of the court's instructions to the jury, the attorney for the complainant, and also for the respondent, in response to an inquiry by the court, announced they had no exceptions to the instructions. In this posture of the record, there is nothing for this court to review. Foster v. Kwik Chek Super Markets, Inc., 284 Ala. 348, 224 So.2d 895.

Assignments of error Nos. 9, 10, 11, and 12, assert error respectively because of the refusal of four charges requested by the complainant. None of complainant's ten requested and refused charges are numbered. However, they are set out in the respective assignments and can thus be identified. The predicate of each of the charges instruct the jury that if the jury "find" etc. The proper predicate for a charge in a civil case is that the jury be "reasonably satisfied" from the evidence. A court will not be reversed for refusal of charges which are not expressed in the exact and appropriate terms of the law. Gilmore Industries, Inc. v. Ridge Instrument Co., 288 Ala. 127, 258 So.2d 55. Furthermore, the principles sought to be enunciated in the charges specified in assignments of error Nos. 9, 10, and 11, were amply covered in the court's oral instructions, while the remaining charge (assign-

ment 12) was faulty in that it is argumentative and elliptical.

Assignment of error No. 13 asserts the court erred in finding that the respondent was in actual possession of the entire tract, while assignment of error No. 14 asserts that the court erred in its final decree in that the decree is contrary to the great weight of the evidence.

Each of these assignments may be disposed of with the observation that from a reading of the testimony, we are clear to the conclusion that the evidence was ample in its tendencies to support the verdict of the advisory jury, to support the Chancellor's finding of fact, and to support the decree rendered.

Affirmed.

MERRILL, BLOODWORTH, MADDOX and FAULKNER, JJ., concur.