[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1178 
This action arose out of a seizure by H.F. Yeager, an auto theft investigator for the Alabama Department of Public Safety, of a motorcycle belonging to James Hurt. The seizure took place during an investigation into a motorcycle theft ring in the Columbus-Phenix City area involving primarily Kawasaki motorcycles similar to the one in question.
As a part of the investigation Sergeant Yeager asked for and received a computer printout of stolen motor vehicles from the Columbus, Georgia, police department. In comparing the printout to a list of motorcycles registered in Russell County, Yeager noticed that a motorcycle belonging to the plaintiff bore a serial number just one digit different from a motorcycle listed on the printout as having been stolen.
Yeager went to the Hurt residence and found no one home. He noticed that the motorcycle in question was located in Hurt's carport. Upon examination of the motorcycle, which had a tarpaulin on it, he observed that the area around the serial number appeared to be smooth, whereas the *Page 1179 
area around the serial numbers on that type of motorcycle typically have a rough appearance.
One of Hurt's neighbors saw Yeager in the carport and, realizing that the Hurts were not home, went over and inquired of Yeager his purpose for being there. Yeager told her that he was a state investigator, gave her his card, and asked her to have the Hurts contact him.
Yeager returned to the Hurt residence on two other occasions and on the last occasion found Mrs. Hurt at home. When she came to the door Sergeant Yeager asked her permission to examine the motorcycle to determine whether the serial number had been altered. He explained to her that neither she nor her husband was a suspect in the case, because he had traced the motorcycle back to the prior owner. After a telephone call to her attorney, Mrs. Hurt denied Sergeant Yeager permission to examine the motorcycle.
Yeager left the Hurt residence and went to the Russell County Courthouse. On advice of an assistant district attorney, Yeager swore out an affidavit stating that a motorcycle bearing an altered engine number was being stored at the premises and that Yeager had personally observed the vehicle in plain view at the Hurt residence. A district court judge issued a search warrant pursuant to which Yeager seized the motorcycle.
The motorcycle was seized on February 14, 1980. Later that month or early in March, Mr. Hurt went to the junkyard where the motorcycle was being stored. Hurt testified that on the one occasion when he saw the motorcycle it was uncovered and stored out in the weather. He stated that certain items, such as the clutch cable and luggage rack, had been changed and that a "crash bar" and "chrome chain guard" were missing. Although he seemed unsure as to the mileage on the motorcycle's odometer when it was seized, Mr. Hurt stated that he was certain that the motorcycle had been ridden extensively between the time it was seized and the time he observed it at the junkyard.
The only testimony as to the value of the motorcycle at the time it was seized was given by Floyd Elliott, who ran the House of Kawasaki. The motorcycle was a used one when it was purchased by Mr. Hurt for $2,050.00, about five years before it was seized. Mr. Elliott testified that at the time of trial the motorcycle would have been worth twelve to fourteen hundred dollars and slightly more than that in February, 1980.
A jury awarded Mr. Hurt $2,000.00 on his state law claims of trespass, conversion, interference with his right of privacy, slander of title and falsely and maliciously swearing out a search warrant. It also awarded him $20,000.00 under a civil rights claim based on 42 U.S.C. § 1983 alleging fourth amendment violations. On a motion for attorney's fees under42 U.S.C. § 1988, the trial court awarded Hurt's attorneys $4,725.00, to be assessed against the State of Alabama.
The same doctrine of judicial immunity which absolutely bars actions for damages against judges grants a conditional and partial immunity to officers of the peace acting in good faith within the bounds of their authority. Fowler v. Alexander,340 F. Supp. 168, 171 (M.D.N.C. 1972). A sheriff or other law enforcement officer is privileged to commit acts which would otherwise be a trespass to chattel or conversion when he acts pursuant to a court order which is valid or fair[1] on its face.Restatement (Second) of Torts § 266 (1965). To be valid the order must meet three requirements:
(1) It must be regular in form,
 (2) It must be issued by a court having authority to issue the particular writ *Page 1180 
and having jurisdiction over the chattels described in it, and
 (3) All proceedings required for the proper issuance of the writ must have duly taken place.
Restatement (Second) of Torts § 266 (1965), comment b.
The same conditional immunity is afforded a law enforcement officer in a § 1983 action. Pierson v. Ray, 386 U.S. 547, 557,87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967).
While a valid court order protects an officer when he seizes property, the officer may become liable if, subsequent to seizing the property, he misuses it. Carroll v. Devitt,107 Mo. 573, 17 S.W. 900 (1891). If the property is lost, damaged, or destroyed the officer, will be liable if the loss is the proximate result of his failure to exercise due care to preserve it. State v. Feld Chevrolet Inc., 403 S.W.2d 672, 681
(Mo.App. 1966). Within a reasonable time after the property is seized, the officer responsible for seizing the property should return it to its putative owner, unless proceedings have been instituted regarding the offense with respect to which the order was issued to seize the property. See § 15-5-16, Code 1975.
On appeal Yeager argued that the trial court erred in refusing to let Corporal Doug Nelson, who was also an auto theft investigator for the Alabama Department of Public Safety, testify as to whether the serial number on the motorcycle in question was altered. After being qualified as an expert, Nelson testified that the serial numbers on motorcycles such as the one in question have a "sandpaper look," not a very smooth surface, with a little ridge around them. Nelson, who testified that he had never seen the motorcycle in question, was shown a photo of the motorcycle, and the following colloquy took place:
 "Q: Based upon your experience as an auto theft investigator and your familiarity with the Kawasaki motorcycles, do you have a professional opinion as to whether the number shown in that photograph has been altered?
 "MR. FUNDERBURK: Now, we object, your Honor, that's —
"THE COURT: Sustained."
Before a witness, expert or otherwise, can give an opinion he must have been in a position to observe, and must have actually observed, the facts on which the opinion is premised. See C. Gamble, McElroy's Alabama Evidence § 105.01 (3d ed. 1977). Since Nelson never saw the motorcycle, we are not prepared to rule that the trial court erred in refusing to allow him to testify, based on a photograph, as to whether the numbers were altered. The ruling seems especially justifiable in light of the fact that Yeager, who is also an auto theft investigator, later testified that he was unable to determine whether the serial numbers had been altered, after not only examining the motorcycle itself, but also running tests on it with an acid solution designed to "raise" serial numbers which have been tampered with.
Yeager also argued that the trial court erred in refusing "to allow the defendant to show evidence that the motorcycle had been tendered" to the plaintiff. Mr. Kenneth Davis, an assistant district attorney, was called to testify about negotiations between himself and Hurt's attorneys regarding return of the motorcycle. On voir dire out of the presence of the jury, Davis testified that after a discussion with Sergeant Yeager he drew up a release because "[i]t's our practice in the office, when some property like that is released, that we normally just draw up a covenant not to sue." The document in question purported to release the Alabama Bureau of Investigation and Sergeant Yeager from all liability in exchange for the return of the motorcycle. The agreement was never executed and the motorcycle was never returned. The trial court ruled that since the offer to return the motorcycle was conditioned on the execution of a release the offer was in the nature of a settlement or compromise of a claim and thus inadmissible.
Yeager argued that testimony regarding the offer was admissible pursuant to either *Page 1181 
one of two theories. First, he maintained that, since Mr. Hurt testified that the motorcycle was never offered back to him, the testimony regarding the offer to return the motorcycle was competent for impeachment purposes. Second, he argued that the testimony was relevant to the issue of whether Yeager acted in good faith, a defense available to him under the state law as well as the § 1983 claims. Pierson v. Ray, 386 U.S. 547, 557,87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967).
The right of a law enforcement officer to seize property is limited to the purpose for which the property was seized. To allow the officer the right to seize the property for the purpose of determining whether the serial number was altered, without requiring him to return it after a reasonable time when he is unable to determine whether the numbers were altered, would permit officers to deprive individuals of their property without due process of law. The duty of the officer to return the property exists regardless of whether the putative owner wishes to file an action arising out of the seizure of the property. Since the offer to return the property was conditioned on the execution of a release, it amounted to nothing more than an effort to settle a pending claim. If the offer had been made unconditionally or based simply on the execution of a receipt by the owner showing that the property had been returned to him, that evidence would have been admissible.
Additionally, we noted in examining the record that Sergeant Yeager was allowed to testify that he had offered to return the property:
 "Q: Have you had that motorcycle up here to tender to Mr. Hurt today?
"A: Sir?
 "Q: Have you given that motorcycle back to Mr. Hurt today or do you have it here to give to him?
"A: I've offered it back, through you, to him.
". . .
 "Q: Do you plan on holding the motorcycle forever, until you make a determination that you can't make after two years?
"A: Well, you're aware that it was offered back —
"Q: Sir?
"A: — and you refused it."
Yeager also argued on appeal that the damages which were awarded were excessive. Where a defendant converts property of the plaintiff in knowing violation of the owner's right and in violation of the law, punitive damages may be assessed. GuniteContracting Co. v. Mize, 341 So.2d 694 (Ala. 1977). Punitive damages are also available in § 1983 actions when the defendant's conduct is shown to have been motivated by evil motive, or when it involves reckless or callous indifference to the federally protected rights of others. Smith v. Wade, ___ U.S. ___, ___ — ___, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632
(1983). The amount of punitive damages is within the discretion of the trier of fact. Badgett v. McDonald, 53 Ala. App. 726,304 So.2d 228 (1974). An award of punitive damages will not be reversed on the grounds of excessiveness unless the award is so excessive as to indicate prejudice or passion. U-Haul Co. ofAlabama v. Long, 382 So.2d 545 (Ala. 1980). We are not prepared to reach such a conclusion in this case.
Finally, Yeager argued that he should have been allowed to elicit testimony regarding similar stolen motorcycles recovered shortly before the incident complained of as tending to show his good faith in seizing the motorcycle. Some testimony regarding other stolen motorcycles in the area was allowed, while objections to other testimony were sustained. Since we have affirmed the verdict based on Yeager's wrongful failure to return the motorcycle after a reasonable length of time, as opposed to a wrongful taking in the first instance, we opine that any error regarding the failure to allow testimony probative of Yeager's intent at the time of the taking was harmless.
In light of Yeager's admonition that an adverse ruling might have a chilling *Page 1182 
effect on law enforcement activities, we wish to reiterate that nothing in this opinion is intended to restrict the right of law enforcement officers to seize property when acting in good faith pursuant to a court order which is valid or fair on its face. Restatement (Second) Torts § 266 (1965). Yeager's right to seize the property in order to determine whether the serial numbers were stolen carried with it, however, a concomitant obligation to Hurt to make that determination within a reasonable time and then to return the property if no judicial proceedings had been instituted with regard to the property.
We affirm the judgment based on the jury's award, on the basis of the evidence that over two years elapsed between the time the property was seized and the time of trial, during which time no proceedings were instituted with regard to the motorcycle and the motorcycle was never returned to Mr. Hurt.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
[1] A writ is fair on its face if (1) it is regular in form, (2) the court issuing it has authority to issue writs of such character, although it did not have authority to issue the particular writ, or although one or more of the proceedings required for its proper issuance have not taken place, and (3) the chattels described in the writ are within the territorial jurisdiction of the court.