The defendant, James Kohn, appeals from a judgment entered upon a jury verdict awarding the plaintiff, Sherron Johnson, on her breach of contract claim, $15,000 for monetary loss and $20,000 for mental anguish. We affirm the trial court's judgment.
The evidence at trial tended to show that Kohn and Johnson entered into an oral contract whereby Kohn was to construct an addition to Johnson's house for a price of $6,500. The contract price was eventually increased to $6,800 when Johnson objected to the sheet rock that Kohn proposed to use in finishing the interior walls and demanded wood paneling instead. Johnson, a widow, lived with her two children in an older structure that in previous years had been a railroad building but had since been converted into a dwelling. Johnson testified at trial that Kohn promised her that she "would be very proud of" the addition when the construction was finished.
Once construction was completed, however, a myriad of problems appeared in the new construction. There was evidence tending to show that the foundation of the addition was improperly laid and finished. The foundation consisted of concrete block piers resting on bricks. No mortar had been used to cement the piers or bricks in place. No footings had been dug beneath the piers, and they merely rested upon the ground.
Evidence also revealed numerous leaks in the ceiling, walls, and windows. There was evidence that the roof leaked because a "valley" had been improperly installed; that windows had not been properly sealed and leaked so badly that Johnson would have to use a towel to wipe up water after *Page 167 
a rainshower; that a bathtub had been improperly installed and sealed and leaked incessantly, although Kohn's carpenter attempted to blame the leak on Johnson's children; that the Masonite siding used to construct the exterior walls was improperly installed and leaked; and that water from one of the roof leaks ran into a light fixture and that this fixture was one-third full of water when the addition was inspected by a building inspector prior to trial. During her direct testimony, Mrs. Johnson stated that the water that collected in this light fixture "scorched" against the globe and that the light bulb in the fixture would "blow" every time it rained.
Additionally, Mrs. Johnson's evidence indicated that the ridge or spine of the roof of the addition was not level. There was evidence that the ridge should have been level with the plane of the roof on the original structure, but that the roof on the addition sagged at an angle where it intersected the original roof. There was also evidence that the roof also shook or vibrated when trains moved along the track across the street from Mrs. Johnson's house.
Oddis Bruner, an employee of National Industries who had 42 years of experience in the construction industry, testified for the plaintiff. He testified that he performed an inspection of the plaintiff's residence and found that the addition was constructed poorly. Specifically, he stated that the piers upon which the addition rested were improperly constructed; that windows were improperly flashed and caulked; that there were no drip caps on the windows and, because of that, moisture was allowed to enter the structure; that the Masonite siding was not properly installed and lacked proper flashing and should have been installed with an anti-leak device called a "Z-bar"; that crown molding and trim were not properly cut and joined together; that carpet was not properly affixed to the floor and was not properly joined together at its seams; that doors were improperly installed — that one was "out of plumb" and another was installed with nails that were so large as to split the door casing; that the bathtub was not properly caulked and the lack of proper caulking had caused the woodwork surrounding the tub to begin to rot; that the rotting was probably not a result of water being splashed from the tub, as the carpenter had claimed, but a result of continuous soaking of the wood; and that the roof was improperly constructed. In his opinion, all of the alleged defects resulted from poor workmanship.
There was evidence that "standard nails," rather than finishing nails, were used to construct the exterior, and that the standard nails would eventually rust and then "back out" of the wood.
There was evidence that the interior paneling was improperly installed and was not properly joined together. There was also evidence that the carpet had not been joined together with carpet tape or another device at its seams and, as a result, had pulled apart. Moreover, evidence indicated that so much moisture had collected in one of the bedrooms as to cause the metal doors of a closet to begin to rust.
Kohn's carpenter installed an adult-size commode in the bathroom, but affixed a child's seat to the commode. Johnson said that when she complained about this, Kohn assured her that the small seat was in keeping with the "new chic" in bathroom decor. There was also evidence that the vent pipe for the commode exited from the exterior wall but ended underneath the eave of the addition. There was evidence that, as a result, noxious odors wafted throughout the addition.
There was evidence to indicate that Mrs. Johnson made numerous telephone calls to Kohn's business in an attempt to have him repair the defects she had found in the addition. Johnson also stated that she had contacted Kohn's carpenter, Mr. Little, and asked him to try to repair the defects. However, she said that neither he nor Kohn made any repairs to the addition. Mrs. Johnson filed her complaint against Mr. Kohn on August 26, 1988.
 Issues
The defendant claims that the trial judge erred in giving certain instructions to the *Page 168 
jury and in refusing to give certain other instructions that he had requested. The defendant also claims that the trial judge should have allowed the jury to inspect the plaintiff's residence. Finally, the defendant claims that the trial judge erred in allowing into evidence a letter written by his attorney to the plaintiff because, he argues, that letter was inadmissible as an offer of compromise.
 Jury Charges
The defendant claims that the trial judge committed reversible error in giving the following jury charge requested by the plaintiff:
 "I charge you, members of the jury, that if you are reasonably satisfied from the evidence that the Defendant James Kohn breached the contract he entered into with the Plaintiff Sherron Johnson by failing to construct the addition on her home in a workmanlike manner, and that the Plaintiff sustained injury by reason of the breach, then you should find for the Plaintiff and award to her such damages as are the proximate result of the breach, which would include the reasonable cost she would necessarily incur in order to make the construction conform to the contract."
The plaintiff argues that this instruction is supported byRose v. Davis, 474 So.2d 1058 (Ala. 1985). In Rose, this Court stated:
 "We believe that the judge's charge meant that the measure of damages would be the amount required to place the plaintiff in the same position he would have been in had the contract been performed. There was expert testimony at trial that it would require approximately $15,000 to complete the pond in accordance with the contract specifications. . . .
". . . .
 " 'This court in Walstrom v. Oliver-Watts Construction Co., 161 Ala. 608, 619, 50 So. 46, 50 said:
 " ' " * * * The authorities above-cited are uniform in holding that an owner who has sustained injury by reason of a breach of the building contract on the part of the builder, may recover in a separate action against the builder, or if sued by the builder on a quantum meruit, that he may recoup or set off such damages as are the proximate result of the breach, the amount of which, as above stated, being the difference between the value of the work furnished or building constructed and the value of that contracted for, or the reasonable value of the extra work occasioned the owner in making the building conform to the contract stipulations. 6 Cyc. 113; Suth on Damages, §§ 709-711." ' "
474 So.2d at 1061-62. (Emphasis added in Rose.) See, also, Foxv. Webb, 268 Ala. 111, 105 So.2d 75 (1958).
The defendant attempts to distinguish Rose from the present case, arguing that in this case the defendant provided a finished product that required only minor alterations, while inRose the work contracted for was never completed. We do not believe that this is a material distinction between the cases. There is evidence in the record from which the jury could have concluded that Mrs. Johnson would be put to considerable expense in making the addition safe and liveable. When a building contract is breached, the owner is generally entitled to the costs of remedying the defect, although this remedy may in some cases be limited by the concept of economic waste. J. Calamari and J. Perillo, Contracts § 14-29 (1987).
A charge that is misleading or incorrect may be the subject of error. Herrington v. Central Soya Co., 420 So.2d 1 (Ala. 1982). In this case, however, we hold that the giving of the requested instruction was not erroneous.
The defendant also claims that the jury should have been given his requested instruction that was based on the theory ofLowe v. Morrison, 412 So.2d 1212 (Ala. 1982). That requested charge read:
 "I charge you ladies and gentlemen of the jury that the standard for damages in this case is the difference between the *Page 169 
fair market value of the property as it should have been constructed and the fair market value of the property as it was when actually constructed."
We believe that the defendant misconstrues the Lowe
rationale. In that case, this Court stated that "[t]he proper measure of damages, where correction of defects would amount toeconomic waste, is the diminution of value of the house as constructed from the value it would have had if it had been constructed in a workmanlike manner." Lowe, supra, at 1213-14 (citations omitted). In that regard, we conclude, the Lowe
opinion is distinguishable.
We agree with the contention of the plaintiff that the theory of economic waste does not apply in this case. The evidence in the record speaks of massive defects in the dwelling as constructed — defects that had caused the addition to rot as a result of water leaks; defects that caused the roof to sag and leak; and a foundation constructed in such a manner that the addition could shift or settle or completely fall from its foundation. Necessarily, this is not a case of economic waste. Cf. Jacob Youngs, Inc. v. Kent, 230 N.Y. 239, 129 N.E. 889
(1921) (cited in numerous texts and treatises as the classic example of economic waste).
There was evidence that the addition was riddled with defects and was potentially dangerous to its occupants. On these facts, the recovery of $15,000 in damages to remedy the numerous defects is not "clearly disproportionate" to the loss in value suffered by Mrs. Johnson. Evidence in the record indicates that the addition was "unlivable," and that portions of the defendant's work would have to be torn down and then reconstructed in order to make the building liveable. There was evidence to show that the plaintiff would incur an expense of over $16,000 to remedy all of the defects found in the addition. The defendant's evidence tended to show that the repairs would cost $1500 to $2000. However, the defendant presented no evidence that would indicate that repairing the defects in the addition would amount to economic waste.
Based upon the foregoing, we conclude that it was not error for the trial court to refuse the defendant's requested charge.
 Jury View of Johnson's Addition
The defendant argues that the trial court abused its discretion in refusing to allow the jury to visit the Johnson addition and to view for itself the condition of the new construction. We note that the defendant concedes that a trial court may grant a jury view of the premises and that the trial court will not be reversed unless there has been an abuse of that discretion. C. Gamble, McElroy's Alabama Evidence § 208.01 (3d ed. 1977). See, also, Moody v. Stanfield, 292 Ala. 185,291 So.2d 301 (1974). Gamble notes that one factor the court may consider is that the thing to be seen by the jury may just as well be photographed. Id. In this case, the plaintiff produced numerous photographs of the premises depicting the condition of the structure. The defendant contends, on the other hand, that the photographs were misleading because the defects that they portrayed could be easily remedied. The trial judge could well have concluded that a jury view might not have been useful in light of the plaintiff's evidence. Therefore, we find that there was no abuse of discretion in this case.
 Attorney's Letter As Offer of Compromise
The defendant claims that the trial court committed reversible error in allowing into evidence a letter written from the defendant's attorney to the plaintiff's attorney. The defendant claims that the letter was inadmissible as an offer of compromise between the parties. Super Valu Stores, Inc. v.Peterson, 506 So.2d 317 (Ala. 1987) (offers of compromise made either before or after litigation is begun are inadmissible). See generally 29 Am.Jur.2d Evidence § 629-30 (1967). Likewise, conditional offers to perform amount to mere efforts to settle a pending claim and are thus inadmissible. Yeager v. Hurt,433 So.2d 1176 (Ala. 1983). However, an express admission of the fact of responsibility *Page 170 
contained in an offer of compromise may be admitted into evidence. Griffin v. Hardin, 456 So.2d 1113 (Ala.Civ.App. 1984).
The letter from the defendant's attorney was dated June 29, 1988, was addressed to Mrs. Johnson's attorney, and read as follows:
 "James Kohn has authorized me to respond to your letters of May 2 and June 15, 1988 concerning Sharon [sic] Johnson.
 "Except for a water spot around the light fixture, which was not due to Mr. Kohn's work, Mrs. Johnson was apparently pleased with the work until she contacted you. Mr. Kohn tells me that the water damage to the light fixture can be repaired for under $100, and he is willing to make that repair even though it is not his fault. He has made several attempts to do so already.
 "I have no confidence in the opinions of your hired witness, Mr. Bruner, and may consider a libel action against him at a later time.
 "Also, in my opinion damages for mental anguish are not recoverable for the alleged breach of contract.
 "I have advised Mr. Kohn that your demands are grossly exaggerated and unreasonable, and that he should not be intimidated, but rather should allow you to proceed with the threatened lawsuit."
The plaintiff did not file her complaint until August 26, 1988.
The rationale and public policy underlying the privileged nature of settlement negotiations is the encouragement of extrajudicial settlement of disputes among potential litigants.Super Valu Stores, Inc. v. Peterson, 506 So.2d 317 (Ala. 1987) (citing Indemnity Company of America v. Pugh, 222 Ala. 251,132 So. 165 (1931)).
Clearly, the letter set out above does not constitute an express admission of the fact of liability. In fact, the letter contains language specifically stating that the defendant denies any responsibility for the defects in the plaintiff's house. The letter did contain language to the effect that the defendant remained willing to make certain repairs to the Johnson addition, apparently in settlement of the dispute. However, the offer of settlement was not clearly stated.
Even though the letter may not have been properly admissible into evidence, in order for its admission to warrant a reversal the claimed error arising therefrom must create some prejudice to the defendant. Rule 45, A.R.App.P., provides as follows:
 "No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of . . . the improper admission or rejection of evidence, . . . unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."
The central complaint of the defendant regarding the use of the letter is that Mrs. Johnson's attorney was allowed to cross-examine the defendant concerning whether the defendant was aware of more than one defect in the addition. The defendant argues that Mrs. Johnson's attorney was allowed to elicit testimony from the defendant showing that he was aware of numerous defects in the construction and yet offered to repair only a single defect. We do not believe that the defendant was prejudiced by the admission of the letter into evidence or was prejudiced by the cross-examination that was based on its contents. Neither the letter nor the defendant's testimony in cross-examination on this point supports a conclusion that the defendant was aware of numerous defects in the construction. The basis of the defendant's liability stems from Mrs. Johnson's testimony and her expert evidence showing that the addition was in a dangerous condition due solely to the defendant's failure to build it in a workmanlike manner.
In addition, it does not appear that this evidence was presented in a calculated attempt to create an improper jury verdict. Beutel v. Paul, 741 S.W.2d 510 (Tex.App. 1987). We believe that the verdict in this *Page 171 
case is fully supported by the evidence considered by the jury, in the absence of the evidence of this alleged settlement offer. Where the alleged error in admitting evidence does not affect the result of the trial, this court will not require a reversal. Baker v. Horsley, 212 Ala. 181, 101 So. 830 (1924). In this case, the testimony showing the defendant's awareness of any defects would have had little, if any, effect on the jury's conclusion as to the damages required to put the plaintiff in the position she would have been in had the contract been properly performed. As we stated earlier, the jury was fully justified in finding that $15,000 would be required to properly repair Mrs. Johnson's addition. That conclusion was amply supported by Mrs. Johnson's evidence.
Therefore, the judgment is due to be, and it hereby is, affirmed.
AFFIRMED.
MADDOX, ALMON, ADAMS and STEAGALL, JJ., concur.