STATE v. AGNES COLLINS AND LOLLIE COLLINS, In re BELL AND JENKINS.

(Filed 22 April, 1915.)

1. **Criminal Law—Frivolous Prosecution—Prosecutors—Costs—Notice—Con-stitutional Law—Statutes.**

   It is necessary for the trial court, in order to adjudge the prosecution of a criminal action to be frivolous and malicious and tax the costs against the prosecutors who have employed attorneys to assist the solic-itor, to give the prosecutors notice of such action and hear the matter according to the "law of the land." Revisal, sec. 1295, section 17 of the Bill of Rights, N. C. Const.

2. **Constitutional Law—Bill of Rights—Due Process.**

   The "law of the land" as used in our Bill of Rights is equivalent to "due process of law," requiring in its essential elements that notice and opportunity to defend be given the party accused.

3. **Same — Appeal and Error — Findings of Court—Frivolous Prosecution—Costs—Procedure.**

   Where the trial judge has dismissed a criminal action as being frivolous and malicious, and taxed the prosecutors with costs, and it appears from his findings of record that he has done so without any proper considera-tion of their affidavits in support of their position, and relevant to the issue, so as to deprive them of the benefits of due process of law, his order will be set aside on appeal, leaving the matter open for proper adju-dication. *S. v. Hamilton,* 106 N. C., 660, cited and distinguished.

APPEAL by prosecutors from *Peebles, J.,* at Fall Term, 1914, of JONES. This was a bill of indictment found by the grand jury.

At the close of the State's testimony, his Honor being of opinion that the prosecution was frivolous and malicious, so adjudged, and ordered that E. H. Bell and F. M. Jenkins, who had assisted in employing coun-sel to aid the solicitor, should be marked as prosecutors; that they be taxed with the costs and placed in the custody of the sheriff "till the costs be paid." These parties, having duly excepted, appealed to the Supreme Court.

*L. I. Moore and J. K. Warren for appellants.*
*No counsel contra.*

HOKE, J. The statute of this State which authorizes the court to mark one as prosecutor in a criminal action (Revisal 1905, sec. 1295) contains the proviso: "That no person shall be made prosecutor after the finding of the bill unless he shall have been notified to show cause why he should

not be made the prosecutor of record," and by the language of this provision, or even by the very fact that notice is required, it is clearly contemplated that the parties interested shall have their cause heard, and heard, too, according to the "law of the land." This term, "law of the land," as used in the 17th section of our Bill of Rights, has received notable and approved definition as: "Law which hears before it condemns; which proceeds upon inquiry and renders judgment only after trial." In *Parish v. Cedar Works,* 133 N. C., 478, it is held to be the equivalent of "due process of law," as it is expressed in the Federal and· many of our State constitutions; and in *Simon v. Craft,* 182 U. S., 427, it is said that the essential elements of due process of law are "notice and opportunity to defend."

In Connor and Cheshire's Constitutions, at page 58, in speaking to these requirements of "notice and hearing," embodied in the constitutional provision, the learned annotators, among other things, say: "Notice and hearing are essential to constitute due process of law or the 'law of the land,' and it is necessary that a party be cited and have *his day in court,* upon which he may appear and defend himself and his rights and his property." And again: "Due process of law not only requires that a party should be brought into court, but that he shall have opportunity, when in court, to establish any fact that, according to the usages of the common law or the provisions of the constitutions, would be a protection to him or his property," citing *S. v. Cutshall,* 110 N. C., 538, and other cases.

On perusal of the facts presented, it clearly appears that these appellants have had no hearing of their cause within the meaning of these principles. At the trial, which seems to have taken place on Tuesday of the term, 8 December, his Honor, on motion, dismissed the action and, being of opinion that the prosecution was frivolous and malicious, called on E. H. Bell, who was present in court, to show cause why he should not be marked as prosecutor. It does not clearly appear whether the order as to Bell was then made or later, but, on being asked by counsel if he would not hear from Bell, his Honor replied that he would, and thereupon issued a citation to F. M. Jenkins returnable on Friday following, and, when the cause was again called, after notice served on Jenkins, the appellants were in court, ready with their own and numerous affidavits of the best citizens of the community tending to show good faith on part of appellants and that defendants in the bill of indictment were guilty as charged, many of them to the effect that "both of the appellants were men of high character and integrity, who stood for all things which make for the best moral standards of citizenship in the town of Maysville, where they reside; that they are men of kind hearts, good judgment, and common sense; that each has a family, consisting of

wife and several children, all of whom deport themselves as good moral citizens," etc.   Others made averment of facts and relevant incidents tending to show guilt on part of defendants in the principal case, and which were known to appellants when they agreed, with other citizens, to employ special counsel to áid the solicitor in the prosecution.   His Honor declined to hear or consider the affidavit of E. H. Bell or any supporting affidavits of "outsiders" on the subject, but finds that "he did not make the order before he heard the affidavit of Jenkins."   In reference to this, to quote from his Honor's findings on the subject, he says: "The statement that I found the facts before I heard the answer of Jenkins is not correct.   It is true that I refused to hear affidavits of outsiders and their petitions.   Bell was in court when I called on him to show cause why he should not be marked as prosecutor and be made to pay the costs.   He showed none, and I made the order.   The solicitor asked if I would not hear from Bell.   I told him I would, and nothing else was said until late Saturday afternoon, when M. Warren asked to be allowed to read Bell's answer and affidavits.   I had decided to hear nothing more from Bell, declined to hear his answer and affidavits, because I had made up my mind that the prosecution was malicious, and did not want to consume any more time with the matter."

In the disposition made of this appeal we do not intend to impair or qualify our former decisions on the subject, notably *S. v. Hamilton,* 106 N. C., 660, and *S. v. Roberts,* 106 N. C., 662, to the effect that, on a hearing of this character, the findings of fact by the trial judge are conclusive.   In the disposition of these and like motions there must necessarily be some tribunal having the power to determine the ultimate facts on which the rights of the parties depend, and  we think the cases which refer this power to the trial judge, who is present and has opportunity to personally observe and note the circumstances and attendant conditions, are grounded in good reason; but, on the facts as they appear from his Honor's findings, and we think it not improper to say that he has spread them on the record with commendable candor, we are of opinion that these men, as heretofore stated, have had no proper hearing, within the meaning of the constitutional provision, and that the judgment against them must be set aside.

This will be certified, that the order and findings by which appellants have been marked as prosecutors and taxed with the costs be set aside and the question reheard in accordance with law and the course and practice of the court.

Reversed.