TOWN OF EMERALD ISLE, BY AND THROUGH ITS MAYOR, RICHARD SMITH, AND ITS DULY ELECTED BOARD OF COMMISSIONERS, AND RICHARD SMITH, A. B. CREW, BEULAH PASE, AND WALT GASKINS, INDIVIDUALLY v. THE STATE OF NORTH CAROLINA, JAMES B. HUNT, GOVERNOR, RUFUS EDMISTEN, ATTORNEY GENERAL, JAMES A. SUMMERS, SECRETARY OF THE DEPARTMENT OF NATURAL RESOURCES AND COMMUNITY DEVELOPMENT, AND JANE S. PATTERSON, SECRETARY OF THE DEPARTMENT OF ADMINISTRATION

No. 111A86

(Filed 7 October 1987)

1. **Constitutional Law § 4; Declaratory Judgment Act § 4— legislative act establishing beach access—standing to challenge**

   The Town of Emerald Isle had standing to bring a declaratory judgment action challenging an act of the Legislature providing for public beach access facilities in a particular location where the act provided that the Town would be responsible for maintaining the facilities. The individual plaintiffs also had standing because the act requires the expenditure of public funds. N.C.G.S. § 1-254.

2. **Statutes § 2.1— disctinction between general and local act—test applied**

   The traditional reasonable classification analysis previously applied in determining what constitutes a "local act" in *Adams v. Dept. of N.E.R.*, 295 N.C. 683, was ill suited to a case involving a legislative enactment establishing public pedestrian beach access facilities at a particular location at Bogue Inlet, and the Supreme Court instead focused its attention on the extent to which the act affected general public interests and concerns. Art. II, § 24 of the North Carolina Constitution.

3. **Statutes § 2.4— legislative act establishing particular public beach access—not a local act**

   A legislative enactment establishing particular public beach access facilities in order to promote the general public welfare of the State does not constitute a local act within the meaning of Art. XIV, § 3, of the North Carolina Constitution. By directing the establishment of public pedestrian beach access facilities, the Legislature sought to promote the general public welfare by preserving the beach area for general public pedestrian use.

4. **Constitutional Law § 19— exclusive emolument or privilege**

   A statute which confers an exemption that benefits a particular group of people is not an exclusive emolument or privilege if the exemption is intended to promote the general welfare rather than the benefit of the individual and there is a reasonable basis for the Legislature to conclude the granting of the exemption serves the public interest. Art. I, § 32 of the North Carolina Constitution.

5. **Constitutional Law § 19; Statutes § 2.4— limitation of vehicular traffic on specific portion of beach—not exclusive emolument or privilege**

   A legislative act establishing pedestrian beach access facilities and limiting vehicular traffic over Blocks 51 thru 54 of the Town of Emerald Isle

was intended to promote the general welfare in that the intent of the act was to reserve the ocean beaches on the western portion of the Town of Emerald Isle for public pedestrian use, and there was a reasonable basis for closing only the ocean front beach dunes area of Blocks 51 thru 54 in that the act restricted vehicular traffic in the areas where such traffic was likely to cause the most interference with public pedestrian use of the beach. Art. I, § 32 of the North Carolina Constitution.

6. **Constitutional Law § 23— closing of right of way—no taking of vested property rights without due process**

A legislative act establishing pedestrian beach access facilities and closing a particular highway right of way at Emerald Isle did not deprive the Town of Emerald Isle of its vested property rights in the beach access ramp right of way without due process of law because the power of municipal corporations to regulate the use of public streets arises through a legislative grant of authority and is subject to the authority of the General Assembly. Art. I, § 19 of the North Carolina Constitution; N.C.G.S. § 160A-296(a)(5).

Justice WEBB did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

APPEAL of right by defendants, pursuant to N.C.G.S. § 7A-30(2), from the decision of a divided panel of the Court of Appeals, 78 N.C. App. 736, 338 S.E. 2d 581 (1986), affirming in part and reversing in part the trial court's grant of plaintiffs' motion for summary judgment in a declaratory judgment action challenging the constitutionality of 1983 N.C. Sess. Laws ch. 539, § 1, entered 8 February 1985 in Superior Court, CARTERET County. Defendants' petition for discretionary review of additional issues was allowed 6 May 1986. Heard in the Supreme Court 11 December 1986.

*Stanley, Simpson & McNeill, by Richard L. Stanley, for plaintiff-appellees.*

*Lacy H. Thornburg, Attorney General, by Daniel F. McLawhorn, Assistant Attorney General, for defendant-appellants.*

FRYE, Justice.

The question in this case is whether Chapter 539 of the 1983 Session Laws of North Carolina entitled, "An Act to Provide for Reasonable Beach Access Within the Town of Emerald Isle,"

violates Article XIV, section 3; Article I, section 32; or Article I, section 19 of the North Carolina Constitution. We conclude that it does not.

The Town of Emerald Isle, one of the plaintiffs in this case, is a municipality located on Bogue Banks, Carteret County, North Carolina, and has approximately eight miles of frontage on the Atlantic Ocean and Bogue Sound.

The owners of property located within the Town of Emerald Isle, at the western end and in close proximity to Bogue Inlet, developed their respective properties, each consisting of a large tract of land fronting approximately 1100 feet on the Atlantic Ocean and running from the Atlantic Ocean to Bogue Sound on the north into Blocks 51, 52 and 53. The subdividers caused subdivision plats for Blocks 51, 52 and 53 to be recorded in the Carteret County Registry. These subdivision plats indicate individual subdivision lots, streets, roads and alleys within Blocks 51, 52 and 53. Inlet Drive is one of the subdivision streets shown on the recorded plats of Blocks 52 and 53, Town of Emerald Isle. The approval and recordation of the subdivision plats for Blocks 51, 52 and 53 constituted an offer for dedication of these streets, roads, and alleys, including Inlet Drive, to the Town of Emerald Isle and to the general public as public streets, roads and alleys. Inlet Drive, as shown on the recorded plats of Blocks 52 and 53, has been accepted, repaired and maintained as a town street as part of the municipal street system pursuant to N.C.G.S. § 136-66.1(2). In addition, Inlet Drive is among the town streets, roads and alleys for which the Town of Emerald Isle receives Powell Bill Funding for municipal roads and streets.

In 1982, the Town obtained a permit from the State and constructed a vehicular ramp over the sand dunes and accreted lands at the western end of Inlet Drive at a point where the paved surface of Inlet Drive had eroded away. The vehicular ramp was constructed on accreted lands within the extended bounds of the right-of-way of Inlet Drive. After completion of the ramp, vehicles could travel westerly over Inlet Drive and the vehicular ramp to the beach areas within Blocks 53 and 54. Pedestrians were also allowed access to the beaches through the right-of-way.

The Town's Beach Access Ordinance regulates the entrance and travel of vehicles on the beaches. Under its terms, vehicles

are allowed to gain access to the Emerald Isle beaches through certain designated access points, and once access is gained vehicular travel is limited to certain marked streets and areas of the beach.

On 16 June 1983, the North Carolina General Assembly enacted Chapter 539 of the 1983 Sessions Laws. Section 1 of the act provides as follows:

The Department of Natural Resources and Community Development, in cooperation with the Town of Emerald Isle, is hereby directed to acquire real property by purchase or condemnation, make improvement for and maintain facilities for the provision of public pedestrian beach access in the vicinity of Bogue Inlet. The town shall not be required to expend local funds to acquire real property, but shall be responsible for maintaining the facility. Public beach access facilities in the vicinity of Bogue Inlet shall include parking areas, pedestrian walkways, and rest room facilities, and may include any other public beach access support facilities. Insofar as is feasible, said facility shall include all lands inletward of the dune adjacent to the terminus of Inlet Drive and the adjacent portion of Bogue Court, as well as such adjacent properties necessary to provide adequate parking and support facilities. Notwithstanding any other law or authority to the contrary, beach access facilities in the vicinity of Bogue Inlet after the installation of said public pedestrian beach access facility shall not include facilities for vehicular access to the beach, including but not limited to the use of the Inlet Drive right-of-way for vehicular access; provided that such prohibition shall not apply until the pedestrian beach access facility is opened; after the installation of said public pedestrian beach access facility, motor vehicles are hereby prohibited from being operated on the ocean beaches and dunes adjacent to and within Blocks 51, 52, 53 and 54 of Emerald Isle; provided that this vehicular access prohibition shall not apply to reasonable access by public service, police, fire, rescue or other emergency vehicles.

In essence, the act directs the Department of Natural Resources, in cooperation with the Town of Emerald Isle, to acquire real property (in the vicinity of Bogue Inlet) which sur-

rounds the vehicle access ramp. The Department is also directed to build facilities for public pedestrian beach access to the property. Once the facilities are completed, the act prohibits motor vehicular traffic in the four blocks adjacent to the facilities and limits the use of the existing vehicle access ramp to public service and emergency vehicles and pedestrians.

Plaintiff Town of Emerald Isle, along with the four individual plaintiffs, property owners and taxpayers of the Town of Emerald Isle, two of whom possess beach access permits issued by the Town authorizing vehicular access to the ocean and inlet beaches, brought this declaratory judgment action to challenge the constitutionality of 1983 N.C. Sess. Laws, ch. 539, § 1. Plaintiffs and defendants stipulated facts essentially as set out above and both moved for summary judgment.

The trial court granted plaintiffs' motion for summary judgment on the following grounds:

(1) Chapter 539 violates the North Carolina Constitution, Article II, section 24(1)(c) prohibition against local acts which authorize "the laying out, opening, altering, maintaining, or discontinuing of highways, streets, or alleys."

(2) Chapter 539 is a special or local act concerning subject matter directed or authorized to be accomplished by general laws, in violation of the North Carolina Constitution, Article XIV, section 3.

(3) Chapter 539 grants an exclusive emolument or privilege to property owners along the beach where vehicles are to be prohibited, in violation of the North Carolina Constitution, Article I, section 32.

(4) Chapter 539 takes the vested property right of plaintiff Town in the dedicated right-of-way of Inlet Drive without due process of law as required by the North Carolina Constitution, Article I, section 19.

The court held that the parts of Chapter 539 which it held unconstitutional could be severed from the rest of the Chapter. The court also ordered the defendants to comply with those parts of the Chapter which it had not held to be unconstitutional. Defendants appealed.

On appeal, the Court of Appeals affirmed the trial court's determination that Chapter 539 was a local act in violation of Article II, section 24 of the North Carolina Constitution. The Court of Appeals, however, reversed that portion of the trial court's decision allowing severance of the unconstitutional sections of the act and held that the act could not be severed. Thus, having determined that the act violated Article II, section 24 of the North Carolina Constitution, the Court of Appeals passed no judgment on the trial court's ruling that the act violates other provisions of the North Carolina Constitution.

Dissenting, Judge Phillips disagreed with the majority opinion that the act violates Article II, section 24 of the North Carolina Constitution. Noting that the act expressly permits the street to continue to be used as a way by the general public, he was of the opinion that Chapter 539 is a reasonable regulation restricting the use of, but not discontinuing a street within the meaning of the constitutional prohibition.

Concurrent with its notice of appeal of right pursuant to N.C.G.S. § 7A-30(2), defendants petitioned this Court for discretionary review of the constitutional challenges to Chapter 539 which the Court of Appeals did not address. Defendants' petition was allowed on 6 May 1986.

I.

[1] We first address the issue of plaintiffs' standing to bring this action for declaratory judgment under N.C.G.S. § 1-254 (1983). The statute provides as follows:

Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder. A contract may be construed either before or after there has been a breach thereof. (1931, c. 102, s.2)

An action may not be maintained under the Declaratory Judgment Act to determine rights, status, or other relations

unless the action involves a present actual controversy between the parties. *Greensboro v. Wall*, 247 N.C. 516, 101 S.E. 2d 431 (1957). Plaintiff is not required to allege or prove that a traditional "cause of action" exists against defendant in order to establish an actual controversy. *Sharpe v. Park Newspaper of Lumberton*, 317 N.C. 579, 347 S.E. 2d 25 (1986). However, it is a necessary requirement of an actual controversy that the litigation appear to be unavoidable. *Id.*

> The essential distinction between an action for Declaratory Judgment and the usual action is that no actual wrong need have been committed or loss have occurred in order to sustain the declaratory judgment action, but there must be no uncertainty that the loss will occur or that the asserted right will be invaded.

22 Am. Jur. 2d, *Declaratory Judgments* § 1.

A declaratory judgment may be used to determine the construction and validity of a statute. *City of Raleigh v. Norfolk Southern Railway*, 275 N.C. 454, 168 S.E. 2d 389 (1969). Denials of property rights or fundamental human rights, in violation of constitutional guarantees, also may be challenged in a declaratory judgment action when a specific provision of a statute is challenged by a person directly and adversely affected thereby. *Jernigan v. State*, 279 N.C. 556, 184 S.E. 2d 259 (1971). In addition, a municipality may have its rights and obligations determined in a declaratory judgment action. *Board of Managers v. Wilmington*, 237 N.C. 179, 74 S.E. 2d 749 (1953).

Turning now to the issue of standing in the instant case, we note that both the State and plaintiffs agree that plaintiff Town has standing to raise the constitutional question whether the act is general or local. We agree. In *Board of Managers v. Wilmington*, 237 N.C. 179, 74 S.E. 2d 749, this Court held that a declaratory judgment proceeding was available to determine the obligation of a municipality to make payments to a hospital under acts of the legislature. Similarly, the Town of Emerald Isle has standing to challenge the act here, since the act provides that the Town shall be responsible for maintaining facilities for the provision of public pedestrian beach access.

The parties disagree, however, on the standing of the individual plaintiffs to challenge the validity of the act. The in-

dividual plaintiffs in this case are taxpayers and property owners in the Town of Emerald Isle. The act in question provides that although "[t]he town shall not be required to expend local funds to acquire real property, [it] shall be responsible for *maintaining* the facility." (Emphasis added.) The act, in directing the Town to maintain the facility, appears to require the expenditure of public funds. A taxpayer in this State has standing to challenge the validity of an act which requires the expenditure of public funds on grounds that the act violates the North Carolina Constitution. *See Martin v. North Carolina Housing Corp.*, 277 N.C. 29, 175 S.E. 2d 665 (1970). *See also Mitchell v. Financing Authority*, 273 N.C. 137, 159 S.E. 2d 745 (1968); *McIntyre v. Clarkson*, 254 N.C. 510, 119 S.E. 2d 888 (1961); *Dennis v. Raleigh*, 253 N.C. 400, 116 S.E. 2d 923 (1960). Therefore we hold that the individual plaintiffs have standing to challenge the act under the North Carolina Constitution.

## II.

The scope of judicial review of challenges to the constitutionality of legislation enacted by the General Assembly is clear. As this Court stated in *Glenn v. Board of Education*, 210 N.C. 525, 529-30, 187 S.E. 781, 784 (1936):

> It is well settled in this State that the courts have the power, and it is their duty in proper cases, to declare an act of the General Assembly unconstitutional—but it must be plainly and clearly the case. If there is any reasonable doubt, it will be resolved in favor of the lawful exercise of their powers by the representatives of the people.

It is not the role of this Court to pass judgment on the wisdom and expediency of a statute. As this Court has recognized:

> The members of the General Assembly are representatives of the people. The wisdom and expediency of a statute are for the legislative department, when acting entirely within constitutional limits. The courts will not disturb an act of the law-making body unless it runs counter to a constitutional limitation or prohibition.

*McIntyre v. Clarkson*, 254 N.C. 510, 515, 119 S.E. 2d 888, 891-92.

### III.

Plaintiffs first contend that the act violates Article XIV, section 3 of the North Carolina Constitution. This portion of our constitution provides, in pertinent part, that "no special or local act shall be enacted concerning the subject matter directed or authorized to be accomplished by general or uniformly applicable laws." The act in question, according to plaintiffs, is a local act. They assert, furthermore, that various provisions of the act concern the subject matter directed or authorized to be accomplished by general or uniformly applicable laws. Specifically plaintiffs urge that the act violates:

1) Article II, section 24(a)(c), which prohibits the enactment of local laws "[a]uthorizing the laying out, opening, altering, maintaining, or discontinuing of highways, streets, or alleys";

2) Article V, section 2(5), which provides that "[t]he General Assembly shall not authorize any county, city, or town, special district, or other unit of local government to levy taxes on property, except for purposes authorized by general law uniformly applicable throughout the State, unless the tax is approved by a majority of the qualified voters of the unit who voted thereon";

3) Article XIV, section 5, which requires that the General Assembly by general law prescribe the conditions and procedures by which certain property shall be dedicated for the purpose of conserving natural resources including the State's beaches; and

4) Article V, section 4(1), which provides that the General Assembly shall enact general laws relating to the contracting of debts by cities and towns.

[2] First we must determine whether Chapter 539 of the 1983 Session Laws is a local act. If a local act, only then must we consider whether it is an act "concerning the subject matter directed or authorized to be accomplished by general or uniformly applicable laws" in violation of Article XIV, section 3. An act which is not a local act, however, is a general law, *see Smith v. County of Mecklenburg*, 280 N.C. 497, 187 S.E. 2d 67 (1972), and thus does not violate Article XIV, section 3.

This Court, in *Adams v. Dept. of N.E.R. and Everett v. Dept. of N.E.R.*, 295 N.C. 683, 249 S.E. 2d 402 (1978), set forth the test for distinguishing general laws from local acts, stating that

the distinguishing factors between a valid general law and a prohibited local act are the related elements of reasonable classification and uniform application. A general law defines a class which reasonably warrants special legislative attention and applies uniformly to everyone in the class. On the other hand, a local act unreasonably singles out a class for special legislative attention or, having made a reasonable classification, does not apply uniformly to all members of the designated class. In sum, the constitutional prohibition against local acts simply commands that when legislating in certain specified fields the General Assembly must make rational distinctions among units of local government which are reasonably related to the purpose of the legislation. A law is general if 'any rational basis reasonably related to the objective of the legislation can be identified which justifies the separation of units of local government into included and excluded categories.' Ferrell, 'Local Legislation in the North Carolina General Assembly,' 45 N.C.L. Rev. 340, 391 (1967).

*Id.* at 690-91, 249 S.E. 2d at 407.

*Adams* involved a challenge to the Coastal Area Management Act of 1974, which established a cooperative program of coastal area management between local and state governments, on grounds that it constituted a local act in violation of Art. II, § 24 of the North Carolina Constitution. Plaintiffs contended first that the General Assembly could not reasonably distinguish between the coast and the remainder of the State when enacting environmental legislation; and secondly that even if the coast could be dealt with separately, the twenty counties covered by the act did not embrace the entire area necessary for the purposes of the legislation. The Court in *Adams*, however, after recognizing the legislative findings that "North Carolina's coastal area has an extremely high recreational and esthetic value which should be preserved and enhanced," *id.* at 692, 249 S.E. 2d at 407, concluded that the "nature of the coastal zone and its significance to the public welfare amply justify the reasonableness of special legislative treatment." *Id.* at 693, 249 S.E. 2d at 408. Additionally, the Court held that the areas included in the act were reasonably related to the purposes of the act, noting that the "constitutional prohibition against local legislation does not require a perfect fit; rather, it requires only that the legislative definition be reason-

ably related to the purpose of the Act." *Id.* at 694, 249 S.E. 2d at 409.

Similar to contentions made by the plaintiffs in *Adams*, plaintiffs here contend that Chapter 539 is a local act arbitrarily separating the Bogue Point area from the rest of the State. The instant case presents the question of whether a legislative enactment establishing particular public pedestrian beach access facilities constitutes a local act, a question not previously decided by this Court.[1] In *McIntyre v. Clarkson*, 254 N.C. 510, 119 S.E. 2d 888, this Court recognized the futility of adhering to any universally applicable formula for determining whether an act is local. The Court notes that "[t]he factors are so variable that no exact rule or formula capable of constant application can be devised for determining in every case whether a law is local, private or special or whether general." *Id.* at 517, 119 S.E. 2d at 893.

We find that the traditional reasonable classification analysis previously applied by this Court in determining what constitutes a "local act" in *Adams* is ill-suited to the question presented in this case, since by definition a particular public pedestrian beach access facility must rest in but one location. Furthermore, assuming the legislature acts within its authority when it establishes such facilities by legislative action, we find it unnecessary to require it to do so by crafting tortured classifications.

The primary purpose of the constitutional limitation on legislative enactments of local acts is to allow the General Assembly an opportunity to devote more time and attention to legislation of state-wide interest and concern. *See* Ferrell, *Local Legislation in the North Carolina General Assembly*, 45 N.C.L. Rev. 340 (1967); *see also McIntyre v. Clarkson*, 254 N.C. 510, 119

---

1. The General Assembly by rule classifies bills as public or local. A public bill is a bill affecting fifteen or more counties. A local bill is one affecting fewer than fifteen counties. *See* N.C. House R. 35(b) (1987). The designation of a bill as public or local by rule of the General Assembly is not determinative of whether a bill is a general law or a local law under the North Carolina Constitution. *See generally* Coates, *The Problem of Private, Local and Special Legislation and City and County Home Rule in North Carolina*, Popular Government, Feb.-Mar. 1949, p. 6; Ferrell, *Local Legislation in the North Carolina General Assembly*, 45 N.C.L. Rev. 340 (1966-67).

S.E. 2d 888.[2] Accordingly we find that, instead of applying a reasonable classification analysis, our attention should focus on the extent to which the act in question affects the general public interests and concerns. In doing so, we are aware that "a statute will not be deemed private merely because it extends to particular localities or classes of persons." *Yarborough v. Park Commission,* 196 N.C. 284, 291, 145 S.E. 563, 568 (1928).

[3] We believe that a legislative enactment establishing particular public beach access facilities in order to promote the general public welfare of the State does not constitute a local act within the meaning of Art. XIV, § 3 of the North Carolina Constitution. Specifically, we hold that the act in question, the purpose of which is to establish pedestrian beach access facilities for general public use in the vicinity of Bogue Inlet, is not a local act. As this Court recognized in *Adams,* the coastal areas of North Carolina are among the State's most valuable resources. That Court found, in essence, that the need to preserve and enhance the enormous recreational and esthetic value of the coastal area was of such significance to the public welfare as to justify special legislative treatment.

The stipulated facts in this case disclose that the ocean front and inlet beaches within the Town of Emerald Isle are frequented on a regular basis by numerous sport fishermen operating vehicles on the beaches. These beach areas adjacent to Bogue Inlet in particular are noted for excellent fishing, and annually attract numerous fishermen. Because no parking is available within two miles of the vehicle access ramp in this area, many of the fishermen are forced to drive along the beaches in order to gain access to the fishing areas.

Chapter 539, however, created a public facility in the vicinity of Bogue Inlet. By directing the establishment of public

---

2. Assuming that a policy motivation behind the local law—general law distinction is, as the dissent suggests, to dissuade legislators from enacting legislation that concerns only their districts and to promote statewide interests, our decision today is within the spirit of this policy concern. We believe the tantamount concern of the state legislature is to provide for the general welfare of the State. To this end, all laws enacted by the legislature must be weighed against this primordial concern. Therefore, we find the standard applied today, a public interest and concern standard, to be wholly consistent with the policy concern espoused by the dissent.

pedestrian beach access facilities including parking areas, pedestrian walkways, and restroom facilities, the legislature by this act has sought to promote the general public welfare by preserving the beach area for general public pedestrian use. We do not believe that Art. XIV, § 3 of the North Carolina Constitution was intended to deprive the legislature of its authority to so act in the interest of promoting the general public welfare.

Furthermore, plaintiffs present before this Court nothing which suggests the absence of a rational basis for the General Assembly's selection of the Bogue Inlet area as the site for public pedestrian beach access facilities proposed by the act. Additionally, we find nothing in the record to support a conclusion that the site was chosen on an improper basis or in any arbitrary manner or that the particular site is unsuited for the intended purpose. We hold therefore that Chapter 539, which provides for the establishment and maintenance of public pedestrian beach access facilities in the vicinity of Bogue Inlet, is a general law and not a local act. We need not determine whether the act regulates one of the subject matters directed or authorized to be accomplished by general law. Since the act is general law and not a local act, it does not violate Art. XIV, § 3 of the North Carolina Constitution.

IV.

Plaintiffs next contend that the act confers a constitutionally prohibited exclusive emolument. Article I, section 32 of the North Carolina Constitution provides that "[n]o person or set of persons is entitled to exclusive or separate emoluments or privileges from the community but in consideration of public service." According to the plaintiffs, the act grants the oceanfront property owners within Blocks 51 thru 54 a special privilege or exclusive emolument in that they do not have the use and enjoyment of their oceanfront property infringed upon or restricted by the public's right to use motor vehicles on the public trust portions of such property. Plaintiffs contend that oceanfront property owners on Blocks 1 thru 50 however are granted no such privilege, since the act does not prohibit vehicular beach access over these areas.

An examination of the prior decisions of this Court reveals that "not every classification which favors a particular group of persons is an 'exclusive or separate emolument or privilege' within the meaning of the constitutional prohibition." *Lowe v.*

*Tarble,* 312 N.C. 467, 470, 323 S.E. 2d 19, 21 (1984) (statute pro-
viding for the assessment of prejudgment interest only against
those defendants covered by liability insurance does not grant ex-
clusive or separate emoluments within the meaning of the consti-
tutional prohibitions); *See Lamb v. Wedgewood South Corp.,* 308
N.C. 419, 302 S.E. 2d 868 (1983) (statute of repose protecting cer-
tain groups in the building industry from liability does not grant
an unconstitutional exclusive or separate emolument); *State v.
Knight,* 269 N.C. 100, 152 S.E. 2d 179 (1967) (statute exempting in-
dividuals engaged in certain occupations from jury duty does not
violate constitutional prohibition against exclusive or separate
emoluments).

As this Court has repeatedly stated, the limitation on the
classification of particular groups of persons intended by the ex-
clusive emolument provision contained in Article I, section 32 of
our constitution

> does not apply to an exemption from a duty imposed upon
> citizens generally if the purpose of the exemption is the pro-
> motion of the general welfare, as distinguished from the
> benefit of the individual, and if there is a reasonable basis for
> the Legislature to conclude that the granting of the exemp-
> tion would be in the public interest. Here, as in questions
> arising under the exercise of the police power pursuant to
> the requirement of due process of law, the principle to be ap-
> plied is that declared by Moore, J., for the Court, in *State v.
> Warren,* 252 N.C. 690, 114 S.E. 2d 660 [1960], where it said:
>
>> "The presumption is that an act passed by the Leg-
>> islature is constitutional, and it must be so held by the
>> courts unless it appears to be in conflict with some con-
>> stitutional provision. [Citations omitted.] The legislative
>> department is the judge, within reasonable limits, of
>> what the public welfare requires, and the wisdom of its
>> enactments is not the concern of the courts. As to
>> whether an act is good or bad law, wise or unwise, is a
>> question for the Legislature and not for the courts—it is
>> a political question. The mere expediency of legislation is
>> a matter for the Legislature, when it is acting entirely
>> within constitutional limitations, but whether it is so act-
>> ing is a matter for the courts. [Citations omitted.]"

*Lowe v. Tarble,* 312 N.C. at 470-71, 323 S.E. 2d at 21. *See also Lamb v. Wedgewood South Corp.,* 308 N.C. 419, 438-39, 302 S.E. 2d 868, 879; *State v. Knight,* 269 N.C. 100, 108, 152 S.E. 2d 179, 184.

[4]  In sum, a statute which confers an exemption that benefits a particular group of persons is not an exclusive emolument or privilege within the meaning of Article I, section 32, if: (1) the exemption is intended to promote the general welfare rather than the benefit of the individual, and (2) there is a reasonable basis for the legislature to conclude the granting of the exemption serves the public interest.

[5]  First, we must determine whether the limitation on vehicular traffic over Blocks 51 thru 54 as provided in the act was intended to promote the general welfare. In ascertaining the intent, the Court should consider the language of the statute, the spirit of the act and what the act seeks to accomplish. *Stephenson v. Durham,* 281 N.C. 300, 188 S.E. 2d 281 (1972).

It appears that the intent of this act is to reserve the ocean beaches on the western portion of the Town of Emerald Isle for public pedestrian use. The act provides for the establishment of public pedestrian beach access facilities, including public parking areas at the western terminus of Inlet Drive located in Block 53. Also, the act restricts vehicular traffic over the beach access ramp and surrounding Blocks 51 thru 54, located at the western end of the Town. The restriction on motor vehicular travel within Blocks 51 thru 54 promotes the general welfare of the public since it protects users of the pedestrian beach access facilities from the unnecessary hazards which arise when the adjacent beach areas are used by pedestrians and vehicles. With this intention in mind, however, we must next consider whether there is a reasonable basis for concluding that the restriction on vehicular traffic within Blocks 51 thru 54 serves the public interest.

Plaintiffs contend that there is no reasonable basis for closing only the oceanfront beach dunes area of Blocks 51 thru 54. Plaintiffs' argument here is essentially that if the intent of the legislature was to protect the users of the beach facilities from the hazards accompanying pedestrian and motor vehicle use of the beach, then vehicular traffic should have been similarly restricted on the soundfront beaches adjoining and immediately

north and east of the proposed facility as well as the remaining ocean beaches. We cannot agree. First, we reject the plaintiffs' contention that, since the purpose of the act may also be served by limitations on areas not included in the act, there is no rational basis related to the purpose of the act for the limitations placed on vehicular access of Blocks 51 thru 54. This Court, borrowing from equal protection analysis, in response to a similar argument in *Adams v. Dept. N.E.R. and Everett v. Dept. N.E.R.*, 295 N.C. 683, 693, 249 S.E. 2d 402, 408 held that

> '[T]here is no constitutional requirement that a regulation, in other respects permissible, must reach every class to which it might be applied—that the Legislature must be held rigidly to the choice of regulating all or none . . . . It is enough that the present statute strikes all the evil where it is felt, and reaches the class of cases where it most frequently occurs.' *Silver v. Silver*, 280 U.S. 117, 74 L.Ed. 221, 50 Ct. 57 (1929). *See generally, Mobile Home Sales v. Tomlinson*, 276 N.C. 661, 174 S.E. 2d 542 (1970).

This analysis, we find, is equally applicable in determining whether there is a reasonable basis for the legislature's restriction in the instant case on vehicular traffic within Blocks 51 thru 54. The restriction on vehicular travel imposed by Chapter 539 reasonably serves the public interest intended here since it restricts vehicular traffic in the areas where such traffic is likely to cause the most interference with public pedestrian use of the beach. The record reflects that the ocean and inlet beaches, not the sound beaches, "are frequented on a regular basis by numerous sport fishermen operating vehicles on the beaches." In addition, Blocks 51 thru 54, located at the western end of the Town immediately adjacent to the public pedestrian beach access facility provided for in the act, are thereby, for the purposes of this act, distinct from other coastal beach areas.

We hold, therefore, that the restrictions on vehicular traffic contained in the act are intended to promote the general welfare of the public and are reasonably based to further this intent. Thus, these restrictions do not violate Art. I, § 32 of the North Carolina Constitution.

## V.

[6] We next consider plaintiffs' contention that the act deprives the Town of its vested property rights in the beach access ramp

right-of-way without due process of law in violation of Article I, section 19 of the North Carolina Constitution. This section provides, in pertinent part, that, "[n]o person shall be . . . in any manner deprived of his life, liberty, or property, but by the law of the land." The phrase "the law of the land" is equivalent to "due process of law." *State v. Collins*, 169 N.C. 323, 84 S.E. 1049 (1915).

The Town claims a vested property right or interest in the access right-of-way and extension of Inlet Drive containing the beach access ramp. This right, according to the Town, arose when the right-of-way and extension of Inlet Drive were dedicated to the Town by subdivision owners. The Town contends that it holds this property right in trust for the general public and that the act, by prohibiting motor vehicle traffic over the vehicular access ramp and the Inlet Drive right-of-way, deprives the public and most importantly property owners on the inlet side of the access ramp of the use of the Inlet Drive right-of-way. The Town maintains that the failure of the State to effectuate this taking in accordance with eminent domain proceedings contained in N.C.G.S. Chapter 40-A constitutes a denial of due process in violation of Article I, section 19 of the North Carolina Constitution.

We agree, however, with the State that the Town's contentions here are based on the erroneous assumption that it has the exclusive and ultimate ability to determine the use of streets and beaches within a municipality. Municipal corporations, including the Town of Emerald Isle, are agencies created by the State and have no governmental power or authority except that which has been expressly or impliedly granted by the legislature. *See State v. Furio*, 267 N.C. 353, 148 S.E. 2d 275 (1966); *State v. McGraw*, 249 N.C. 205, 105 S.E. 2d 659 (1958); *Clayton v. Tobacco Co.*, 225 N.C. 563, 35 S.E. 2d 691 (1945). Powers conferred on the municipal corporation may be enlarged, abridged or entirely withdrawn by the legislature at its pleasure. *Clayton v. Tobacco Co.*, 225 N.C. 563, 35 S.E. 2d 691.

The power of municipal corporations to regulate the use of public streets arises through a legislative grant of authority at N.C.G.S. § 160A-296(a)(5). *Elizabeth City v. Banks*, 150 N.C. 407, 64 S.E. 189 (1909). However, that power is subject to the authority of the General Assembly to regulate the use and control of public roads and streets. *Suddreth v. Charlotte*, 223 N.C. 630, 27 S.E. 2d 650 (1943).

This Court has previously held that "the control of streets is primarily a State duty, and the legislative control, in the absence of constitutional restriction, is paramount, subject to the property rights and easements of the abutting owner." *Clayton v. Tobacco Co.*, 225 N.C. at 566, 35 S.E. 2d at 693. The reasoning behind the principle was fully established in *Elizabeth City v. Banks*, 150 N.C. 407, 64 S.E. 189. Basically, the control of streets exercised by the legislature is necessary to assure that the streets are used for the benefit of the public at large, not simply for the benefit of the public as it is determined by the local authorities. This Court, in *Elizabeth City* explained that:

'Public streets, squares and commons, unless there be some special restriction when the same are dedicated or acquired, are for the *public* use, and the use is none the less for the *public at large*, as distinguished from the municipality, because they are situated within the limits of the latter, and because the Legislature may have given the supervision, control and regulation of them to the local authorities. The Legislature of the State represents the public at large, and has, in the absence of special constitutional restraint, and subject to the property rights and easements of the abutting owners, full and paramount authority over all public ways and public places.'

*Id.* at 413, 64 S.E. at 191. (Citations omitted.) (Emphasis in original.)

The plaintiffs here do not allege any property right or easements of owners of property abutting Inlet Drive or any applicable constitutional provision which restricts the paramount legislative authority to regulate the use and control of public streets. Thus, the regulation of the use of Inlet Drive is within the paramount authority of the legislature and does not constitute a taking in violation of Article I, section 19 of the North Carolina Constitution.

We conclude that Chapter 539 of the 1983 Session Laws of North Carolina does not violate sections 19 or 32 of Article I nor section 3 of Article XIV of the Constitution of North Carolina. The decision of the Court of Appeals is therefore reversed. This case is remanded to that court for further remand to the Supe-

rior Court, Carteret County, for further proceedings consistent with this opinion.

Reversed and remanded.

Justice WEBB did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

The majority holds that, because Chapter 539 of the 1983 Session Laws of North Carolina is a general rather than a local act, it does not violate the North Carolina Constitution. In reaching its decision, the majority employs a wholly new and unsupported standard and makes meaningless a century-old and important distinction between local and general legislation in North Carolina. In fact, Chapter 539 is a local act through and through and, as such, violates Article II, section 24 of our state Constitution. Accordingly, I dissent.

The important distinction between local and general acts has long been recognized by both the courts and the people of the State of North Carolina. More than a century ago, our Court addressed the inherent danger of legislative action being accomplished by "local" rather than by "general" acts in the case of *Simonton v. Lanier*, 71 N.C. 498 (1874). The principal policy rationale for the constitutional limitation on legislation by local act is not, as the majority claims, merely to allow the General Assembly an opportunity to devote more time and attention to matters of state-wide interest and concern. Rather, we stated in *Simonton* as follows:

> Public laws are founded on the gravest considerations of public benefit. They are deliberately enacted, are permanent in character, are for the equal benefit of all, and of universal application. Not so with private statutes. These are not of common concern, and do not receive the watchful and cautious scrutiny of the legislature, which is devoted to those of a public character. They are often procured by agents, and for a purpose, who are watchful to take advantage of any relaxation in legislative vigilance.

*Id.* at 504-05.

Perhaps more important, the people of North Carolina have long evidenced their own recognition of and concern about the potential dangers of local legislation. They spoke most loudly on the subject when they wrote into our state Constitution a specific prohibition against local acts relating to particular subjects, providing thereby that any such acts are void. Article II, section 24 of the North Carolina Constitution provides as follows:

### Sec. 24. Limitations on local, private, and special legislation.

(1) *Prohibited subjects.* The General Assembly shall not enact any local, private, or special act or resolution:

- (a) Relating to health, sanitation, and the abatement of nuisances;

- (b) Changing the names of cities, towns, and townships;

- (c) *Authorizing the laying out, opening, altering, maintaining, or discontinuing of highways, streets, or alleys;*

- (d) Relating to ferries or bridges;

- (e) Relating to non-navigable streams;

- (f) Relating to cemeteries;

- (g) Relating to the pay of jurors;

- (h) Erecting new townships, or changing township lines, or establishing or changing the lines of school districts;

- (i) Remitting fines, penalties, and forfeitures, or refunding moneys legally paid into the public treasury;

- (j) Regulating labor, trade, mining, or manufacturing;

- (k) Extending the time for the levy or collection of taxes or otherwise relieving any collector of taxes from the due performance of his official duties or his sureties from liability;

- (l) Giving effect to informal wills and deeds;

- (m) Granting a divorce or securing alimony in any individual case;

(n) Altering the name of any person, or legitimating any person not born in lawful wedlock, or restoring to the rights of citizenship any person convicted of a felony.

(2) *Repeals.* Nor shall the General Assembly enact any such local, private, or special act by the partial repeal of a general law; but the General Assembly may at any time repeal local, private, or special laws enacted by it.

(3) *Prohibited acts void. Any local, private, or special act or resolution enacted in violation of the provisions of this Section shall be void.*

(4) *General laws.* The General Assembly may enact general laws regulating the matters set out in this Section.

N.C. Const. art. II, § 24 (emphases added).

In deciding that Chapter 539 of the 1983 Session Laws is a general rather than a local act, the majority employs a wholly unsupported legal test and turns a deaf ear to these widely recognized dangers of local legislation. Though the majority discusses in some detail our 1978 decision in *Adams v. Dept. of N.E.R. and Everett v. Dept. of N.E.R.*, 295 N.C. 683, 249 S.E. 2d 402 (1978), it concludes that the analysis utilized in that case is "ill-suited" to the question presented by the case at bar. Accordingly, it announces a new and wholly unsupported standard by which legislation in North Carolina shall be designated as local or general in nature. The test, states the majority, is "the extent to which the act in question affects the general public interests and concerns." Applying its new standard to the facts, the majority concludes, incredibly, that the act in question, which affects four blocks of the Town of Emerald Isle, is a general and not a local act within the meaning of the North Carolina Constitution.

I believe that the majority has unnecessarily and unwisely rendered meaningless the important distinction between local and general legislation. Granted, our Court stated in *McIntyre v. Clarkson,* 254 N.C. 510, 517, 119 S.E. 2d 888, 893 (1961), that the "factors are so variable that no exact rule or formula of constant application can be devised for determining in every case whether a law is local . . . or . . . general." However, given the result of

their application of the new standard to the act in question in this case, I can only conclude that no act, no matter how geographically limited, no matter how unrelated to state-wide affairs, can ever again be designated "local." Under the majority's reasoning, the century-old concerns about the dangers of legislation by local act, so eloquently expressed by the courts and the people of the State of North Carolina, will go unacknowledged. Legislation formerly considered local in nature, no less fraught with the inherent dangers our Court discussed in *Simonton*, will apparently now be considered general for purposes of our Constitution. This is a lamentable result for the State of North Carolina.

Properly analyzed, Chapter 539 of the 1983 Session Laws is in actuality a "local" act through and through. Like many areas of the law, the law in North Carolina concerning the distinction between local and general legislation has evolved over time. Standards and principles set out in our own cases, today inexplicably ignored by the majority, show clearly that the act in question in the case at bar is local and not general legislation.

In *Day v. Commissioners*, 191 N.C. 780, 133 S.E. 164 (1926), our Court held that an act which directed the Commissioners of Surry and Yadkin Counties to construct a bridge across the Yadkin River, at a location provided for in the act, was a local and special act within the meaning of our state Constitution. We so held because the act was "direct legislation addressed to the accomplishment of a single designated purpose at a 'specific spot.'" *Id.* at 784, 133 S.E. at 167. Under *Day*, Chapter 539, which directs that public pedestrian beach access facilities be established and maintained at a specific location, would surely be considered a local act.

In the 1961 case of *McIntyre v. Clarkson*, 254 N.C. 510, 119 S.E. 2d 888, our Court further defined the concept of local law as follows:

"The phrase 'local law' means, primarily at least, a law that in fact, if not in form, is confined within territorial limits other than that of the whole state, or applies to any political subdivision or subdivisions of the state less than the whole, or to the property and persons of a limited portion of the state, or to a comparatively small portion of the state, or is

directed to a specific locality or spot, as distinguished from a law which operates generally throughout the state. . . ."

*Id.* at 517-18, 119 S.E. 2d at 893 (quoting 50 Am. Jur. *Statutes* § 8, pp. 24 (1944), now appearing as rewritten in 73 Am. Jur. 2d *Statutes* § 7, p. 273 (1974) ).

Accordingly then, in *McIntyre,* our Court set up five alternate tests for whether a law is a local act: (1) a law is confined within territorial limits other than that of the whole state; (2) a law applies to any political subdivision or subdivisions of the state less than the whole; (3) a law affects property and persons of a limited portion of the state; (4) a law affects a relatively small portion of the state; and (5) a law is directed to a specific locality or spot. Chapter 539 of the 1983 Session Laws satisfies all five of these tests. The law's effect is confined within the territorial limits of the Town of Emerald Isle and applies only to the political subdivision of the Town of Emerald Isle. Moreover, Chapter 539 affects only a four-block area of the Town of Emerald Isle — hardly a large portion of the persons or property within the State of North Carolina. Under *McIntyre,* Chapter 539 of the 1983 Session Laws simply can be nothing other than a local act.

In the more recent case of *Adams v. Dept. of N.E.R. and Everett v. Dept. of N.E.R.,* 295 N.C. 683, 249 S.E. 2d 402 (1978), our Court once again addressed the distinction between local and general legislation. *Adams* involved a challenge to the Coastal Area Management Act of 1974, which established a cooperative program of coastal area management between local and state governments, on grounds that it constituted a local act in violation of article II, section 24 of our State Constitution. In holding that the act there in question was a general rather than a local act, we stated that "the mere fact that a statute applies only to certain *units* of local government does not by itself render the statute a prohibited local act." *Id.* at 690, 249 S.E. 2d at 407 (emphasis added). However, we stated further:

> [T]he distinguishing factors between a valid general law and a prohibited local act are the related elements of reasonable classification and uniform application. A general law defines a class which reasonably warrants special legislative attention and applies uniformly to everyone in the class. On the other hand, a local act unreasonably singles out a class for special

legislative attention or, having made a reasonable classification, does not apply uniformly to all members of the designated class.

*Id.* at 690-91, 249 S.E. 2d at 407.

Under the approach set out in *Adams,* Chapter 539 would once again be classified as a local act. Significantly, whereas the Coastal Area Management Act was directed by the legislature toward the entire coastal region of North Carolina, the act in question here affects a mere four-block area within but one town. More exactly, in *Adams,* the classification of coastal land, versus noncoastal land, as the target of the legislation was a reasonable classification by the legislature. Here, however, the choice of four blocks within the Town of Emerald Isle, as opposed to the entire balance of the state, or even to the coastal area, as the law's target was clearly not reasonable. Chapter 539 of the 1983 Session Laws is a local law under our own case law and should have been so found by the majority.

Finally, erasing all doubt as to the proper designation of Chapter 539 of the 1983 Session Laws as a local rather than a general law is the General Assembly's own labeling of the then-pending bill as local. On both the first and second readings of then-House Bill 886, the measure was explicitly designated as a "local bill." A law that walks and talks like a local law is, it seems to me, strong indication that it is indeed a local law.

Having determined, contrary to the majority, that Chapter 539 of the 1983 Session Laws is a local act, I turn next to the question not reached by the majority—whether, as a local act, Chapter 539 violates article II, section 24 of the North Carolina Constitution. In my opinion, Chapter 539 does indeed violate our state Constitution and it is therefore void.

Chapter 539 seeks to accomplish three objectives. First, it directs the Department of Natural Resources and Community Development to acquire land and to build on that land a parking lot, rest room, and other "pedestrian access facilities," bypassing the department's normal procedures for such development. The statute also prohibits vehicular traffic on the beach fronting the ocean, the inlet, and the sound in a four-block area surrounding the proposed facility. Second, the statute requires the Town of

Emerald Isle to maintain these facilities with unspecified municipal funds. Third, the statute prohibits vehicular traffic on a small portion of Inlet Drive, presumably overriding the discretion given to the department to maintain streets within facilities under its control.

## I.

The establishment of the beach facility on Bogue Inlet is, for all intents and purposes, the establishment of a state park. The act calls for the construction of the sort of facilities often associated with parks. Moreover, it prohibits driving onto or on the beach in the vicinity of the facilities — again suggesting an attempt to create a recreational area. I believe that a local act creating a state park is violative of our state Constitution and is void.

The establishment of state parks is entrusted to *general laws* by article XIV, section 5 of the North Carolina Constitution:

> It shall be the policy of this State to conserve and protect its lands and waters for the benefit of all its citizenry, and to this end it shall be a proper function of the State of North Carolina and its political subdivisions to acquire and preserve *park, recreational,* and *scenic* areas . . . and . . . to preserve as a part of the common heritage of this State its forests, wetlands, estuaries, beaches, historical sites, openlands, and places of beauty.
>
> . . . The General Assembly shall prescribe by *general law* the conditions and procedures under which such properties or interests therein shall be dedicated for the aforementioned public purposes.

N.C. Const. art. XIV, § 5 (emphases added). A local act may not be enacted where there is a general law on the subject. N.C. Const. art. XIV, § 3. It seems clear, therefore, that a local act may not create a state park.

It is the clear intent of our legislature that state park land be acquired and maintained as part of a plan; taking into account the

use and enjoyment of all of the residents of our state.[1] In 1977, the General Assembly authorized a State Parks Study Commission to study the needs of our state for park lands. 1977 N.C. Sess. Laws ch. 1030. This Commission made a recommendation for a five-year plan of development of the park system. *See* New Directions, A Plan for the North Carolina State Parks and Recreation System, 1979-1984. This report, which includes recommendations regarding beach access, emphasizes the need for comprehensive planning. Implicit in the activities of the State Parks Study Commission is a recognition that state parks are a statewide concern and, as such, should continue to be the subject of general legislation. In short, we have a state parks *system*, coordinated by state agencies that hold the state park lands in stewardship for the state as a whole.

The task of acquiring and managing lands within the system is assigned to the Department of Natural Resources and Community Development, as advised by the Parks and Recreation Council. N.C.G.S. § 143B-311 (1983). In determining the suitability of land for inclusion in "the statewide outdoor park and recreation system," the Department of Natural Resources and Community Development looks to "[t]he statewide comprehensive outdoor recreation plan and the individual site master plan." 15 NCAC 12D .0106(a). There are seven criteria for determining the suitability of a proposed site:

(1) statewide significance of the site;

(2) scenic beauty of the site;

(3) outdoor recreation potential of the site;

(4) unsatisfied recreation demands;

(5) the extent to which the various regions of the state are presently served;

(6) the goal of a balanced system including state parks, state recreation areas, state trails, state natural and scenic rivers, and state nature preserves;

---

1. The North Carolina State Parks System was created in 1916 with the acquisition by the state of Mount Mitchell. Since that time, over 119,000 acres of land have been added to the system, encompassing parks in all regions of the state. *See* Report of the State Parks Study Commission (1985).

(7) the need for preservation of the site.

15 NCAC 12D .0106(b)(1)-(7).

There is ample authority for a state park to be developed on Bogue Inlet if the area were found by the department to meet the above criteria. However, there is no indication that the beach facilities planned for Bogue Inlet were ever considered in the light of these criteria. Rather, the statute merely directs the department to bypass its procedures to include this beach in the State Parks and Recreation System.[2]

I would hold that a state park may only be created by general legislation, and not by local act. Because Chapter 539 purports to create a state park by local act, I would hold that it is repugnant to our Constitution and therefore void.

II.

Chapter 539 of the 1983 Session Laws also contains language that authorizes the state and *requires* the town to "maintain" the "beach access support facilities":

The Department of Natural Resources and Community Development, in cooperation with the Town of Emerald Isle, is hereby directed to acquire real property by purchase or condemnation, make improvement for and *maintain* facilities for the provision of public pedestrian beach access in the vicinity of Bogue Inlet. The town shall not be required to expend local funds to acquire real property, but shall be responsible for *maintaining* the facility. Public beach access facilities in the vicinity of Bogue Inlet shall include parking areas, pedestrian walkways, and rest room facilities, and may include any other public beach access support facilities.

1983 Sess. Laws ch. 539, § 1 (emphases added).

By the plain language of the act, then, the facilities are to be maintained. Although the statute is ambiguous in some respects,

---

2. If the area around Inlet Drive becomes part of the state parks system, the control over a number of activities now regulated by the town would fall to the Department of Natural Resources and Community Development. Among these would be not only access to the beach, but the hours of access, whether bathing or fishing would be allowed, whether pets would be allowed without leashes, and whether alcoholic beverages would be allowed. *See generally* 15 NCAC 12B.

it is clear that the town is responsible for such maintenance. The legislature thus has, by local act, placed the financial burden of maintaining a facility presumably created to serve the people of the state at large on the shoulders of the few taxpayers of the Town of Emerald Isle.

### III.

The people of this state have guaranteed unto themselves through the enactment of their state Constitution that:

> The General Assembly shall not enact any local, private, or special act or resolution . . . [a]uthorizing the laying out, opening, altering, maintaining, or discontinuing of highways, streets, or alleys . . . .

N.C. Const. art. II, § 24(1)(c). An objective reading of the statute requires the conclusion that it calls for just such "laying out, opening, altering, maintaining, or discontinuing of highways, streets, or alleys."

There is nothing to suggest that the word "alter" has attained a technical meaning or is otherwise a term of art. Thus, the ordinary meaning of the word should suffice. *Williams v. Williams*, 299 N.C. 174, 261 S.E. 2d 849 (1980). The term "alter" is defined as:

> To make a change in; to modify; to vary in some degree; to change some of the elements or ingredients or details without substituting an entirely new thing or destroying the identity of the thing affected. To change partially. To change in one or more respects, but without destruction of existence or identity of the thing changed; to increase or diminish.

*Black's Law Dictionary* (5th ed. 1979). There is nothing in this definition, or in common sense, to support the notion that a street is not altered when it is changed from a street for vehicular use to a walking path for pedestrians.

Neither can it be said that the act does not "discontinue" the street. Our statutes define "street":

> The entire width between property or right-of-way lines of every way or place of whatever nature, when any part thereof is open to the use of the public as a matter of right

*for the purposes of vehicular traffic.* The terms "highway" and "street" and their cognates are synonymous.

N.C.G.S. § 20-4.01(13) (Cum. Supp. 1985) (emphasis added).

A street without vehicular access, then, is no "street" at all. Thus, once Inlet Drive becomes a passageway for pedestrians only, it is discontinued as a street within the statutory definition.[3]

The facilities covered by the act include Inlet Drive. N.C.G.S. § 136-44.12 authorizes the Department of Transportation to "maintain all roads leading into and located within the boundaries of all areas administered by the Division of State Parks of the Department of Natural Resources and Community Development." Clearly, Inlet Drive leads into and is located within the area affected by chapter 539. Thus, the act violates the constitutional proscription against local acts authorizing the "maintaining" of streets.

The control over municipal streets is entrusted by general legislation to the municipalities. N.C.G.S. §§ 136-66.1 to -66.7 (1986), 160A-299 (1982). Whether chapter 539 be interpreted as authorizing the alteration, the discontinuation, or the maintenance of Inlet Drive, it certainly does one of these. And because each is prohibited by article II, section 24 of the North Carolina Constitution, I would hold that chapter 539 of the 1983 Session Laws is void.

The purpose of the constitutional prohibition against the use of local acts to accomplish certain ends was to prevent just the sort of situation presented by this case—the use of legislative power to further very limited local interests rather than the general welfare. The majority has placed its stamp of approval on what is in reality a *local act* of the General Assembly which, in several respects, does precisely what the people of this state have, in their Constitution, forbidden.

Because chapter 539 is, in my opinion, a local act, it is violative of our state Constitution and is therefore void.

---

3. While, under Chapter 539, Inlet Drive would still be accessible to public service and emergency vehicles, such vehicles, when responding to an emergency, would not need specific statutory authority to use Inlet Drive. *See* Restatement (Second) of Torts §§ 196, 197, 211 (1963) (public or private necessity as a defense to action in trespass). *See generally* W. Keeton, *Prosser & Keeton on Torts,* § 13 (5th ed. 1984).